In the Matter of HENRY K. ASTWOOD, Respondent, against S. HOWARD COHEN et al., Constituting the Board of Elections of the City of New York, Respondents, and Patrolmen's Benevolent Association of the City of New York et al., Interveners, Appellants.

Argued October 21, 1943; decided October 22, 1943; opinions filed January 6, 1944.

*James H. Tully, Truman H. Luhrman* and *Gerald F. Swanton* for Patrolmen's Benevolent Association of the City of New York et al., interveners-appellants. City charters are amendable by local laws adopted on initiative petition and referendum vote. (State Const. art. IX, § 12; *Burke* v. *Kern,* 287 N. Y. 203; *Matter of Mooney* v. *Cohen,* 272 N. Y. 33.) The amendatory procedure of the City Home Rule Law is without restriction. (*Matter of LaGuardia* v. *Smith,* 288 N. Y. 1; *Burke* v. *Kern,* 287 N. Y. 203.) The proposed amendment is a proper amendment to the Charter and may be made effective only by inclusion in the Charter.

*Irving H. Saypol, Leo Kotler* and *Saul Kaplan* for William J. Alsopp et al., interveners-appellants. The submission to the electorate of the proposed local law amending the Charter is in strict compliance with the statutes. (City Home Law, § 19-a; *Johnson* v. *Etkin,* 279 N. Y. 1; *Burke* v. *Kern,* 287 N. Y. 203; *Matter of Mooney* v. *Cohen,* 272 N. Y. 33; *Matter of LaGuardia* v. *Smith,* 176 Misc. 482; 288 N. Y. 1.) The court at Special Term erroneously interpreted the word "includes" as used in subdivision 3 of section 2 of the City Home Rule Law as a word of limitation instead of in the sense of enlargement which the legislature intended and held that a charter may contain only provisions relating to the establishment or continuation of the city as a municipal corporation or body politic or fundamental provisions relating to its corporate power or which affect the frame-work of its government. (*American Surety Co.* v. *Marotta,* 287 U. S. 513; 1 McQuillan on Municipal Corporations (2d ed.), § 336; *Browne* v. *City of New York,* 241 N. Y. 96; *People ex rel. Devery* v. *Coler,* 173 N. Y. 103.)

*Daniel Wm. Leider, Nathan Witt* and *H. I. Cammer* for Greater New York Industrial Union Council, *amicus curiae* in supporting the position of the appellants. Amendment of the Charter is a proper way whereby petitioners can be effectively assured of the increases in salary which they seek; the Charter contemplates that such increases will be secured by provision " in this Charter or by statute " and enactment of a local law by the City Council would be ineffective to secure the adjustments, since the power to grant the adjustment is vested in the Board of Estimate and not in the City Council.

*Paul Windels, Stewart W. Bowers* and *David B. Tolins* for respondent. The proposed local law purporting to amend the New York City Charter by initiative and referendum is not authorized by the City Home Rule Law. It is not in fact an amendment to the New York City Charter. (*Burke* v. *Kern,* 287 N. Y. 203.) The proposed local law is in fact an amendment of the Administrative Code. It therefore purports to amend or supersede the provisions of an act of the Legislature. This is contrary to the express provisions of sections 11 and 12 of the City Home Rule Law and of section 982–7.0 of the Administrative Code.

THACHER, J.   On June 2, 1943, there was filed with the City
Clerk of the City of New York a petition for submission to
the electors of said city of a proposed local law providing for
the payment of a salary bonus to every policeman and fireman
in said city.   Following the provisions of section 19-a of the City
Home Rule Law, the City Clerk transmitted the proposed local
law to the City Council, the local legislative body of the city.
The City Council refrained from passing the proposed local
law and from submitting it to the electors of the city for a period
of more than two months, and on August 20, 1943, an additional
petition was filed with said City Clerk requiring the submission
of the proposed local law to the electors at the general election
to be held in the year 1943.   Thereafter the City Clerk sub-
mitted the proposed local law to the Board of Elections of said
city.

This proceeding was commenced under article 78 of the
Civil Practice Act to procure an order directing the Board of
Elections not to print or cause said local law to be printed upon
the official stationery, ballots and paraphernalia for use in
said general election.   Such an order was made at Special
Term and affirmed in the Appellate Division, one justice dis-
senting.

All the formalities prescribed in section 19-a, which authorizes
the amendment of a city charter by direct action of the electors,
were complied with; there were more than sufficient signatures,
both to the original and additional petitions, and neither the
authenticity of the signatures nor the qualifications of those
who signed is questioned.   The procedural steps were taken in
accordance with the provisions of section 19-a.

Objection is made by the respondents that the proposed local
law, although designated as an amendment to the New York
City Charter, was not such within the meaning of section 19-a of
the City Home Rule Law.   The appellants, however, insist that
the proposed local law is an amendment to the New York City
Charter within the meaning of this section.   Both courts below
held that it is not and we affirmed their decision on October 22,
1943.

Relying upon section 31 of the City Home Rule Law requiring
liberal construction of that law, it is argued that the Legisla-
ture has by the enactment of section 19-a granted the power to

legislate directly concerning any matter which may properly be the subject of a local law. Liberal construction may not, however, ignore the legislative mandate that only amendments to the charter, as distinguished from other laws, may be enacted by the process of initiative and referendum. On the other hand, we do not regard the definition of a city charter in section 2 of the City Home Rule Law as limiting the amendments which may thus be adopted to those which affect structure only. Between these two extremes we must find the pathway of decision, not by generalization, but by application of the statutory test to the facts in each case. The facts which control will be found in the nature of the proposed local law and its relation to the provisions of a particular city charter. The most that can be said is that in the consideration of these controlling facts will be found the basis for determination as to whether in the particular case the proposed law is in truth an amendment of the Charter or is so far unrelated to the Charter as to be an amendment only in name.

In applying this statutory test to the New York City Charter it is important to bear in mind that the Legislature has sharply distinguished between the Charter of the city and the Administrative Code. In providing for the preparation and submission of the Charter, the Legislature directed that it should be a short form charter, setting forth the structure of the city government and the manner in which it is to operate. Recognizing the need for codification of the confused mass of laws affecting the city which could not be made a part of the short form Charter for submission to the electors, the Board of Estimate and Apportionment on May 24, 1935, made a special appropriation to the Charter Revision Commission for a study of all these laws and required that such study be kept separate from the work of revising the Charter. (Report of Charter Revision Commission, New York City Charter and Administrative Code Annotated, p. x.)

In the following year the Legislature created the Board of Statutory Consolidation to take over this work and directed the Board to prepare an Administrative Code which should harmonize with the Charter if a short form Charter should be adopted by a majority of the electors. (L. 1936, ch. 483.) This Board was organized in June, 1936. (Report of Board of

Statutory Consolidation, New York City Charter and Administrative Code Annotated, p. xxxix.) Section 951 of the Charter, submitted to and approved at the general election in 1936, made provision for continuing all laws affecting the city not inconsistent with the Charter but only until the adoption of the Administrative Code as contemplated by chapter 483 of the Laws of 1936. The Charter took effect January 1, 1938. In December, 1937, the Board of Statutory Consolidation made its report to the Legislature, and on December 30, 1937, the Legislature, by a two-thirds' vote upon an emergency message of necessity, enacted the Administrative Code to take effect on January 1, 1938.

Thus it happened that New York City since January 1, 1938, has been governed by a short form Charter, setting forth the structure of the city government and the manner in which it is to operate, which was adopted by the voters of the city, and by an Administrative Code which was enacted by the Legislature as a codification and restatement of existing law " in harmony with and supplemental to the New York city charter " (L. 1937, ch. 929). City Home Rule Law, section 19-a, was added by chapter 479 of the Laws of 1937, and the general revision of the City Home Rule Law effected by chapter 867 of the Laws of 1939 changed section 19-a only with respect to the procedure for submission of a " local law amending a city charter " to the electorate.

In applying the statutory test to the proposed local law we must relate the law to the short form Charter of the City of New York and determine whether the law is in truth an amendment of the Charter or is merely labeled as such. The proposed local law in fact amends nothing in the Charter and the provisions of law which are amended are found in the Administrative Code — those relating to policemen in section 434a–10.0 and those relating to firemen in section 487a–8.0. Granting a salary bonus to city employees is quite unrelated to any provision of the New York City Charter and the grant proposed in no sense alters or changes any provision contained in the Charter. The Charter makes provision of law for fixing the compensation to be paid to city employees (§ 67). It also provides fixed salaries for the members of the Board of Estimate, thus relieving them of the necessity of fixing their own salaries (§§ 3,

25, 81, 91). Because it was thought desirable that the Planning Commission should be a body as independent as possible, the salary of the chairman was fixed and the salaries of the members of the Commission could not be reduced during their terms of office. (Report of New York City Charter Revision Commission, New York City Charter and Administrative Code Annotated, p. xxii; Charter, § 194.) Similar prohibition against salary reductions was made with regard to the members of the Board of Standards and Appeals in order that this quasi-judicial Board should also be independent (§ 661, subd. c). A fixed salary of $5,000 was also prescribed in the Charter for members of the City Council (§ 25). Except as provided in the Charter or by statute, the power to fix all salaries was vested in the Board of Estimate (§ 67). However, salaries fixed by statute may be increased by local law, provided the local law is approved by the Board of Estimate (§ 39). These careful provisions were quite obviously designed to transfer to the Board of Estimate the administrative duty of fixing compensation to be paid to employees by the city. Inherently, the duty is administrative.

The proposed local law changes none of these provisions relating to salaries contained in the City Charter. It ignores them all. The power of the Board of Estimate as defined in the Charter remains unchanged, as does the power of the City Council, with the approval of the Board of Estimate, to amend the Administrative Code by increasing the salaries of policemen and firemen. In a word, the proposal is totally to ignore the existing law and with complete independence thereof to award a bonus to employees of the city by popular vote. The only law proposed to be amended is the Administrative Code, which was enacted by the Legislature and which may only be amended as provided by section 39 of the City Charter or by the Legislature itself. To ignore existing provisions of law is not to amend them.

Section 19-a restricts the use of the initiative and referendum to Charter amendments as distinguished from local laws which are enacted in ordinary course by the legislative body in the regulation of the city's affairs without amendment of the Charter. Even more clearly, administrative action which may be taken without legislative authority or approval was not intended

to be taken by direct action of the voters. The test of validity in every case is whether the local law is in truth and in fact an amendment of a city charter. (*Matter of Maylender* v. *Morrison,* 260 App. Div. 892, affd. 284 N. Y. 575; *Matter of Steinberg* v. *Meisser,* 291 N. Y. 685.) The tradition of representative democratic government is too strong to permit an inference that the Legislature intended to extend the exceptional process of direct legislation to details of administration unrelated to amendments of the Charter, whether regulated by local laws and ordinances or managed by responsible administrative agencies. (*Matter of McCabe* v. *Voorhis,* 243 N. Y. 401, 413.)

The order should be affirmed on the ground that the proposed local law is not an amendment to the Charter of the City of New York, within the meaning of section 19-a of the City Home Rule Law.

LOUGHRAN, J. (dissenting). Section 19-a of the City Home Rule Law is captioned " Provisions for adoption of *amendments.*" It prescribes a procedure whereby " *a local law amending a city charter* " shall become operative if the law receive the affirmative vote of a majority of the qualified electors of the city voting thereon. (My emphasis.) The question made in this case is one as to the range of the direct local legislation thus authorized. As read by this court, the above word " *amendments* " means in this connection no more than such changes in a city charter as are related to the existing charter text. For a number of reasons, I do not agree to that construction.

When so used without restriction, the word " *amendments* " is to be taken to include not only corrections or alterations of an antecedent text but also additions wholly alien thereto. (*Denver* v. *New York Trust Co.,* 229 U. S. 123, 145; *Christian Feigenspan, Inc.,* v. *Bodine,* 264 F. 186, 190, 253 U. S. 350; *State ex rel. Greenlund* v. *Fulton,* 99 Ohio St. 168, 179.) Our Legislature has consistently styled such an independent addition to a city charter as " An Act to amend " the instrument. (See *City of Watertown* v. *Fairbanks,* 65 N. Y. 588; *Willis* v. *City of Rochester,* 219 N. Y. 427, 432.) In quite the same fashion, this court in *Matter of Stoughton* v. *Cohen* (281 N. Y. 343) said: " Reference to the revised record of the Constitutional Conven-

tion of 1938 shows an intention to amend the then existing Constitution by adding thereto new articles and modifying certain portions '' (p. 347). I see no reason for supposing that the Legislature did not follow this settled usage when the word '' *amendments* '' was unreservedly employed in section 19-a of the City Home Rule Law.

No question in respect of the phraseology of any particular city charter is here presented. At the moment, section 19-a of the City Home Rule Law is all that calls for construction. Nevertheless, I recognize that a city charter always embodies words which are the organic law of the municipal corporation and its Constitution. (See City Home Rule Law, § 2 and 1 Dillon on Municipal Corporations, 5th ed. § 59.) From that more elevated viewpoint, the broader inquiry is whether an amendment of a Constitution must be related in some degree to an existing provision thereof.

Strong reasons for an affirmative answer were advanced in the attack upon the Eighteenth Amendment of the Federal Constitution — the prohibition of the manufacture, sale, et cetera, of intoxicating liquors for beverage purposes. (*National Prohibition Cases*, 253 U. S. 350.) Thus Mr. Herbert A. Rice, as Attorney-General of Rhode Island, said: '' It is ' This Constitution ' that may be amended. ' This Constitution ' is not a code of transient laws but a framework of government and an embodiment of fundamental principles. By an amendment, the identity or purpose of the instrument is not to be changed; its defects may be cured, but ' This Constitution ' must remain.'' (253 U. S. at p. 355.) In like vein, Mr. Elihu Root said: '' The framers undoubtedly regarded the power to amend only as authorizing the inclusion of matter of the same general character as the instrument or thing to be amended; and as all the Constitutions of their day were concerned solely with the distribution and limitation of the powers of government, and not with the direct exercise thereof by the Constitution makers themselves, no amendment of the latter sort would have been deemed appropriate or germane by them.'' (253 U. S. at pp. 363–364.) This argument did not prevail. The highest court of the nation ruled that the Eighteenth Amendment — despite its irrelation to the existing text of the Federal Constitution — was within the general power to amend reserved by article V. (253 U. S. at p. 386; cf. *Matter of Stoughton* v. *Cohen, supra.*)

But no such mighty contest now detains us. Unlike our Constitutions, the charters of our cities never have been merely basic laws. The historical fact is that in respect of the peculiar composition of the governing body, these charters have been of great variety. (See 1 Dillon on Municipal Corporations, 5th ed. § 59.) Moreover, most of these charters contain numerous minor subjects which exhibit manifold differences in content and detail. (See *People ex rel. City of Rochester* v. *Briggs*, 50 N. Y. 553; *People ex rel. Ellis-Joslyn Pub. Co.* v. *Common Council of City of Lackawanna*, 223 N. Y. 445; *Matter of Keep* v. *City of Lockport*, 266 N. Y. 583; *Heaton* v. *City of Cohoes*, 270 N. Y. 222, 226; *Schaefer* v. *City of Long Beach*, 271 N. Y. 81; *City of Johnstown* v. *Wells*, 275 N. Y. 623; *Kaplan* v. *City of Poughkeepsie*, 279 N. Y. 153; *Ellis* v. *City of Geneva*, 288 N. Y. 478.) Hence, section 19-a of the City Home Rule Law did not look to any need to preserve the essential character of ingrained procedures.

Section 2 of the City Home Rule Law provides: " As used in this chapter, * * * the term ' charter ' means a state statute or local law which establishes or continues the city as a municipal corporation or body politic and includes the fundamental provisions defining, extending or limiting its corporate powers or affecting the frame-work of its government." I agree with the court in its refusal to read this definition as a ban upon all amendments to a city charter save those affecting the structure of the city government.

In short, I believe the local law in question was " a local law amending a city charter " within the purview of section 19-a of the City Home Rule Law. (See *Matter of Steinberg* v. *Meisser*, 291 N. Y. 685.)

LEHMAN, Ch. J., RIPPEY, LEWIS and CONWAY, JJ., concur with THACHER, J.; LOUGHRAN, J., dissents in opinion in which DESMOND, J., concurs.

Order affirmed, etc.