In the Matter of JOHN F. NOONAN, Petitioner, against THOMAS P. O'LEARY, as City Clerk of the City of Rochester, Respondent.

Supreme Court, Special Term, Monroe County, August 12, 1954.

*Charles P. Maloney* and *Samuel Levy* for petitioner.

*Honora A. Miller, Corporation Counsel (James H. Boomer* of counsel), for respondent.

ROBERTS, J. In 1925, the city-manager form of government was adopted by the City of Rochester. On July 1, 1954, a petition was presented to the city clerk, pursuant to section 19-a of the City Home Rule Law, containing a proposed local law for submission to the electors which, among other things, would amend the city charter to abolish the city-manager form of government. The city clerk refused to accept said petition for filing and this proceeding was instituted pursuant to article 78 of the Civil Practice Act, in the nature of an application for an order of mandamus to compel the city clerk to accept said petition for filing.

The City Home Rule Law was enacted by the Legislature in 1924 (L. 1924, ch. 363), following an amendment of the State Constitution in 1923. Section 19-a was first made a part of the City Home Rule Law in 1937 (L. 1937, ch. 479), and has subsequently been amended from time to time. The section is entitled *" Provisions for adoption of amendments "*, and provides for the method of adopting a local law amending a city charter to be initiated by the filing of a petition signed by 10% of the total number of votes cast for Governor at the last gubernatorial election. Insofar as the proposed local law set forth in the petition purports to amend the city charter the procedure followed was in accordance with the statute. Such proposed local law is not, however, limited to a proposed amendment of the city charter, for by section 5 thereof, it purports to amend " all other local laws, ordinances and resolutions of the City of Rochester " by substituting the word " mayor " for the words " city manager " wherever the words " city manager " may be found in such local laws, ordinances and resolutions.

The power of the People to legislate was conferred by the Constitution upon the Legislature, where it remains except so far as it may have been delegated by the Legislature within constitutional limits (*Matter of Lynch* v. *O'Leary,* 166 Misc. 567; *Barto* v. *Himrod & Lovett,* 8 N. Y. 483). The City Home Rule Law delegates no power to the People to initiate or adopt by popular vote amendments to city ordinances, resolutions or local laws other than those amending a city charter. The statute excludes ordinances and resolutions from the definition of the term " local law " (City Home Rule Law, § 2). Section 19-a is expressly limited to local laws amending a city charter. A charter amendment is defined as " any change in an existing charter presented as such under authority of this chapter or any charter or state statute " (City Home Rule Law, § 2).

In *Matter of Astwood* v. *Cohen* (291 N. Y. 484), it was held that a local law, instituted by petition pursuant to section 19-a, which provided for a salary bonus for policemen and firemen, was not an amendment of the city charter and hence could not be submitted to the voters pursuant to such section. The court there said at page 488: " Liberal construction may not, however, ignore the legislative mandate that only amendments to the charter, as distinguished from other laws, may be enacted by the process of initiative and referendum." And again at pages 490–491: " Section 19-a restricts the use of the initia-

tive and referendum to Charter amendments as distinguished from local laws which are enacted in ordinary course by the legislative body in the regulation of the city's affairs without amendment of the Charter. Even more clearly, administrative action which may be taken without legislative authority or approval was not intended to be taken by direct action of the voters. The test of validity in every case is whether the local law is in truth and in fact an amendment of a city charter. (*Matter of Maylender* v. *Morrison,* 260 App. Div. 892, affd. 284 N. Y. 575; *Matter of Steinberg* v. *Meisser,* 291 N. Y. 685.) The tradition of representative democratic government is too strong to permit an inference that the Legislature intended to extend the exceptional process of direct legislation to details of administration unrelated to amendments of the Charter, whether regulated by local laws and ordinances or managed by responsible administrative agencies. (*Matter of McCabe* v. *Voorhis,* 243 N. Y. 401, 413.) ''

In *Matter of Lynch* v. *O'Leary* (166 Misc. 567, *supra*), an initiative petition was filed pursuant to certain provisions of the Rochester City Charter, calling for the adoption of an ordinance. The provisions of the .city charter authorizing such petitions were held invalid and not within the authorization of the City Home Rule Law. It was there noted that section 19-a created an exception only so far as it permitted the initiative of local laws amending city charters.

In *Matter of McCabe* v. *Voorhis* (243 N. Y. 401, 413), the court, in discussing the City Home Rule Law, said: '' The power to provide for a referendum must be found in the City Home Rule Act. (*Mills* v. *Sweeney,* 219 N. Y. 213.) Otherwise it is unauthorized. Direct legislation in cities must always rest on some constitutional or statutory grant of power. Government by representation is still the rule. Direct action by the people is the exception.''

That portion of the proposed local law now under consideration which purports to amend other local laws, ordinances and resolutions of the City of Rochester, is clearly unauthorized by the City Home Rule Law and is invalid and unconstitutional. This is not a situation where the invalid portion can be stricken down and the valid portions, if any, of the proposed local law preserved because under section 19-a the proposed local law as '' set forth in full '' in the petition must be adopted or submitted to the electors '' without change ''. A portion of the proposed local law, therefore, being invalid, renders the entire proposal of which it is a part, invalid.

This precise ground of invalidity was not specified by the city clerk as one of the grounds for refusing to accept the petition for filing. The reasons which may have been assigned for his action are not important. Every question affecting the validity of the proposed local law is before the court in this proceeding. This court cannot compel the city clerk to accept for filing a petition calling for the adoption of an invalid law as it would be in effect to require him to perform a meaningless act for which mandamus is never granted (*Matter of Lynch* v. *O'Leary,* 166 Misc. 567, 573, *supra*).

Two additional objections to the proposed local law may be considered together, viz., that the proposed local law contains no enacting clause and that the title does not properly refer to the subject matter.

The State Constitution requires that all bills enacted by the Legislature shall contain an enacting clause (N. Y. Const., art. III, § 13). It further provides that no private or local bill shall contain more than one subject and that shall be expressed in the title (N. Y. Const., art. III, § 15). When the City Home Rule Law was adopted, similar provisions with reference to local laws were included therein (City Home Rule Law, § 13, subds. 2, 3). If these provisions apply to local laws amending a charter initiated by petition pursuant to section 19-a, then the proposed local law here under consideration is clearly invalid. It contains no enacting clause. The title to the proposed local law reads as follows: '' Amending generally and supplementing an act constituting the charter of the City of Rochester consisting of Chapter 755 of the Laws of 1907 as amended and supplemented by various statutes and local laws.'' This title gives no possible suggestion that the purpose of the proposed local law is to abolish the city-manager form of government under which the City of Rochester has operated for upwards of twenty-five years. It would be interesting to speculate as to how many signers of the petitions presented to the city clerk read anything beyond the title of the proposed local law. Such a title on a similar legislative enactment would render it unconstitutional. (*Greene* v. *Dunscomb,* 281 N. Y. 261; *Matter of Dean,* 230 N. Y. 1.) When the City Home Rule Law was adopted, it contemplated that all local laws would be enacted by the local legislative body subject to the provisions thereof relating to referendum. The provisions requiring an enacting clause and a title which should refer to the subject matter, were included within section 13 which was entitled

*"Action by local legislative body"*. By the general amendment to the City Home Rule Law in 1939 (L. 1939, ch. 867), section 13 was subdivided. The provision requiring an enacting clause was incorporated without change in subdivision 2 which reads as follows: "The style of local law shall be 'Be it enacted by the (naming the local legislative body) of the city of (name of city) as follows:'". The provision relating to the title was incorporated without change in subdivision 3 which reads as follows: "Every such local law shall embrace only one subject. The title shall briefly refer to the subject matter." In 1937, section 19-a was added (L. 1937, ch. 479) providing a new method for adopting a local law amending a city charter. Provisions similar to those found in section 13 were not included within the new section 19-a, and petitioner claims, therefore, that the requirements for an enacting clause and for a title which shall properly identify the subject matter, do not apply to a local law amending a city charter initiated pursuant to section 19-a. This argument is not persuasive. Subdivisions 2 and 3 of section 13 by their language apply to every local law regardless of the manner of its enactment. In 1939, subsequent to the adoption of section 19-a, the City Home Rule Law was amended generally, at which time section 2, containing the definition of the term "local law", was amended (L. 1939, ch. 867). As so amended, the definition reads as follows: "As used in this chapter, (1) the term 'local law' means a law adopted pursuant to this chapter or to other authorization of a state statute or city charter by the local legislative body of a city as constituted under section ten of this chapter *or a law proposed* by a charter commission or *by petition and ratified by popular vote as provided in* section twenty or *section nineteen-a of this chapter* or other provision of a state statute, city charter or local law;". (Emphasis supplied.) It would seem to follow that a local law amending a charter, initiated or adopted pursuant to section 19-a, is subject to the same requirements of all local laws as specified in subdivisions 2 and 3 of section 13, and hence, that the failure of the proposed local law to contain an enacting clause or a proper title, renders the same invalid.

A further consideration lends support to this conclusion. Prior to the enactment of the City Home Rule Law the Legislature was empowered to enact local laws subject however to the two constitutional restrictions mentioned. With the adoption of the City Home Rule Law and the amendments thereto

it delegated its power with respect to such legislation to the cities and in the case of charter amendments to the electors thereof. The Legislature could, however, delegate no greater power than it possessed. Whatever delegated power passed to the electors under section 19-a passed to them subject to the same constitutional limitations which applied to the Legislature as the delegating body.

On April 11, 1951, the following amendment to section 19-a of the City Home Rule Law became effective (L. 1951, ch. 721): "No such proposed local law requiring the expenditure of money shall be accepted by the city clerk or be adopted or become effective unless there shall be submitted as a part of such proposed local law, a plan to provide moneys and revenues sufficient to meet such proposed expenditures." One of the objections raised to the proposed local law here under consideration is that it requires the expenditure of money without any plan to provide moneys and revenues sufficient to meet the expenditures. If such objection is valid, the city clerk properly refused to accept the petition for filing (*Matter of Hardwick* v. *Kramer,* 200 Misc. 207, affd. 278 App. Div. 1040, affd. 303 N. Y. 605).

The proposed local law, insofar as it purports to be in the nature of a charter amendment, contains the following provision: "Sec. 38. FIXED SALARIES — The annual salary of the Mayor shall be fifteen thousand dollars and the annual salary of the Vice-Mayor shall be two thousand five hundred dollars." The proposed change in the form of city government would be effective January 1, 1956. The present charter does not fix the salary of the Mayor or vice-mayor but provides that they shall be fixed by the council. The present salary of the Mayor as so fixed is $1,000 per annum and the vice-mayor as such draws no salary. The proposed amendment would therefore call for a fixed annual expenditure of $17,500 per year starting in 1956, which is $16,500 in excess of the present salary expenditures for the same offices.

In spite of this provision, petitioner claims that the proposed local law does not provide for the expenditure of money because, if adopted, it will actually effect a saving to the city. This argument is based on the claim that the office of city manager will be abolished and that the combined annual salaries of the city manager and his deputy as now fixed, not by the charter, but by the council, are $26,750, which is more than the salary of the Mayor and vice-mayor as fixed in the

proposed local law. Under the present city-manager form of government, the city manager is selected by the council " upon the basis of his executive and administrative qualifications without regard to his political party affiliations ", and he holds office at the pleasure of the council (Rochester City Charter, § 90). An elective Mayor would not ordinarily be selected on the basis of his executive and administrative qualifications and in all probability would require technical advice and assistance in the administrative problems of municipal government. Petitioner makes no allowance for the probable cost of such services. If such cost should exceed $10,250, the proposed change in the form of city government would result in increased rather than decreased expenditures.

Whether or not the proposed change in the charter might effect savings sufficient to offset the proposed increase in salary of the Mayor and vice-mayor is a matter which can be determined only after the plan is put in operation. The question of whether the proposed local law calls for the expenditure of money must, however, be determined from the wording of the local law itself and not from mere speculation as to its ultimate effect.

The fact cannot be disputed that the proposed local law by its exact wording calls for the expenditure of $17,500 a year starting in 1956. This brings the proposal within section 19-a of the City Home Rule Law, as amended, which requires that the proposed local law contain a plan to provide moneys and revenues sufficient to meet the proposed expenditures.

Petitioner claims that the proposed law does provide a plan for meeting such increased expenditures. He claims that the increased salaries of the Mayor and vice-mayor can be paid out of what will be saved by not having a city manager and his deputy. Even if this could be construed as a plan for providing money within the meaning of section 19-a, the fact remains that the proposed local law contains no such plan and makes no provision for providing money for the new expenditures. Petitioner also points to section 82 of the proposed law as providing the required plan. This section relates to the powers and duties of the Mayor and provides that he shall prepare and submit to the council an annual budget. The mere power to prepare and submit a budget obviously does not meet the requirements of section 19-a.

In *Matter of Hardwick* v. *Kramer* (200 Misc. 207, affd. 278 App. Div. 1040, affd. 303 N. Y. 605, *supra*), a petition was

presented to the city clerk of Kingston containing a proposed local law amending the city charter providing for an increase in the minimum salaries paid to policemen and firemen. The proposed local law contained what purported to be a plan for providing the money. It specified that the common council should provide the moneys and they should be raised from such sources and through such manner by which the council was authorized by law to raise money for salaries, government functions and purposes. The court held that this proposed plan did not comply with the requirements of section 19-a. It was there pointed out that if the proposed law had provided that the money be raised by a retail sales tax, or by a motor vehicle use tax, or by a general business tax, or by an increase in the real property tax rate, or by a specified combination of specific taxes, there would have been a compliance with the statute. It would seem apparent that the increase in the salary of the Mayor and vice-mayor is as much an expenditure of money as the increase in the salary of policemen and firemen. The amount of the expenditure is not material. In every such case the local law must contain a plan to provide the money or revenues necessary to meet the expenditures whatever such expenditures may be. The proposed local law here under consideration contains no such plan. It is therefore invalid under section 19-a and the city clerk acted properly in declining to accept said petition for filing.

Other objections have been raised to the proposed local law, all of which have been examined but which in the opinion of the court are not sufficient to invalidate the same.

A further objection was raised upon the ground that the petition did not contain a sufficient number of authenticating signatures of duly qualified electors of the City of Rochester. On the argument it was agreed between counsel and the court that this objection would not be passed upon in the present proceeding but that if this proceeding resulted in an order requiring the clerk to accept the petitions for filing, such objection could within thirty days after such filing be raised pursuant to the provisions of section 16 of the City Home Rule Law. Such objection has not therefore been considered or passed upon.

Application is denied and proceeding dismissed, without costs.