In the Matter of AMELIA CASSESE, Respondent, *v.* HERMAN KATZ, as City Clerk of the City of New York, Appellant.

In the Matter of MARIA E. MONPLAISIR et al., Respondents, *v.* HERMAN KATZ, as City Clerk of the City of New York, Appellant.

First Department, August 26, 1966.

*Norman Redlich* of counsel (*Pauline K. Berger* and *Irwin L. Herzog* with him on the brief; *J. Lee Rankin, Corporation Counsel,* attorney), for appellant.

*Charles Ballon* of counsel (*Eugene M. Kline, Michael J. Silverberg* and *Neil Lipton* with him on the brief; *Phillips, Nizer, Benjamin, Krim & Ballon,* attorneys), for Amelia Cassese, respondent.

*James J. Leff* for Maria E. Monplaisir and others, respondents.

*Carl Rachlin* and *Stephen M. Nagler* for American Jewish Committee and others, *amici curiæ.*

*Per Curiam.* These are two appeals, as quite fully set forth in the dissenting opinion, from a judgment and order which in essence upheld the validity of petitions seeking to amend the New York City Charter by submitting to the electorate at the next general election two local laws purporting to establish certain procedures for the handling of civilian complaints against members of the Police Department.

Material to the disposition of these appeals is the effect to be given *Matter of Astwood* v. *Cohen* (291 N. Y. 484). The proposed local law there considered purported to amend the Charter of the City of New York so as to provide for the payment of a salary bonus to the uniformed members of the Police and Fire Departments. In holding that the proposed local law was not an amendment within the meaning of section 19-a of the City Home Rule Law (predecessor of section 37 of the Municipal Home Rule Law), the Court of Appeals stated (p. 489) : " Granting a salary bonus to city employees is quite unrelated to any provision of the New York City Charter and the grant proposed in no sense alters or changes any provision contained in the Charter." Judge LOUGHRAN, dissenting (p. 491), was of the view that when used without restriction " the word ' amendments ' is to be taken to include not only corrections or alterations of an antecedent text but also additions wholly alien thereto."

The opinions in *Astwood* were filed on January 6, 1944. At that time the City Home Rule Law contained no definition of the term " charter amendment." Such a definition was supplied in April, 1944, when sections 2 and 19-a of the City Home Rule Law were amended. These amendments were considered by the Court of Appeals in *Matter of Warden (Newburgh Police Dept.)* (300 N. Y. 39, 42–43), where they are set forth as follows: " The amendment to section 2 added a new subdivision 5 in these words: ' (5) the term " charter amendment " means any change in an existing charter presented as such under authority of

this chapter or any charter or state statute. A charter amendment may be of any extent and may deal with any number of subjects. A proposal presented as a charter amendment shall not be rejected as such on the ground that it constitutes a new charter.' (L. 1944, ch. 602.) The amendment to section 19-a made that section applicable to a local law amending a city charter ' however extensively'. (L. 1944, ch. 602.) ''

After considering the relevance of the *Astwood* case to the issues before it, the opinion in *Warden*, Chief Judge LOUGHRAN now writing for a unanimous court, continued (p. 43):

'' Whether the above 1944 amendments to the City Home Rule Law permit additions to a short-form charter of matters unrelated to existing provisions thereof is a question which is not here presented.

'' The second objection of the taxpayer — that the power to fix salaries is administrative rather than legislative in character and hence is not subject to the power of referendum — can be shortly disposed of. The above amendments to the City Home Rule Law now make such a distinction entirely inadmissible as a reason for invalidating a charter amendment proposed to be made by a local law.''

The 1944 amendments to the City Home Rule Law, with certain changes not material here, have been carried forward into sections 2 and 37 of the Municipal Home Rule Law. Accordingly, as we read the opinions of the Court of Appeals, it would appear that the short-form charter of the City of New York may be validly amended by the procedure of initiative and referendum if the proposed local law, whether of a '' legislative '' or '' administrative '' character, alters or changes any provision contained in the charter, although it would appear to be an open question whether additions to the charter unrelated to its existing provisions may be accomplished by such procedure.

In our opinion no resolution of this question is required by the instant litigation, for it seems plain that each of the two proposals has a direct relation to, and would alter or change, existing charter provisions. Section 434 of the charter provides that the Police Commissioner shall have cognizance and control of the government, administration, disposition and discipline of the Police Department and of the police force. Sections 1102, 1103 and 1105 grant the Commissioner, as head of his department, a panoply of powers with respect to the organization of his department, the assignment of duties to his subordinates, and the making of rules and regulations for the conduct of his office and the carrying out of its powers and duties. Manifestly the two proposals are related to the authority granted

to the Commissioner by the provisions of the charter and alter or change them by restricting his authority. For under the Cassese proposal the Commissioner may not establish a review board unless every member is a regularly appointed full-time administrative employee of the Police Department; and under the Monplaisir proposal the Commissioner may not establish such a board unless every member is a Deputy Commissioner appointed pursuant to section 432 of the charter.

It is to be noted also that the Monplaisir proposal provides that no board for the review of civilian complaints against policemen who allegedly have abused their authority or used unnecessary force may be established by any city officer unless each member thereof is a Deputy Police Commissioner; and that the Cassese proposal provides: "Neither the Mayor, the Commissioner, nor any other administrator or officer of the City of New York shall have power to authorize any person, agency, board or group to receive, to investigate, to hear, or to require or recommend action upon, civilian complaints against members of the Police Department except as provided in this section." Such provisions would seem to modify the express powers of the Mayor and the Commissioner of Investigation (see §§ 3, 8, and 803–805 of the charter).

We conclude, accordingly, that the dispositions below should be affirmed. In doing so we have not overlooked the apprehensions voiced in the dissenting opinion concerning the harmful possibilities to which the initiative and referendum procedure may lend itself. But the point, it seems to us, should be properly addressed to the electorate and the Legislature.

The parties have not argued, and therefore we do not consider, whether the proposed local laws restrict any constitutionally guaranteed right of petition by citizens.

The judgment and order respectively entered on or about August 12, 1966 should each be affirmed, without costs and without disbursements to any party.

STEVENS, J. (dissenting). These are appeals in companion cases which raise virtually identical questions. Accordingly, they will be discussed together.

The appeal in *Matter of Cassese* v. *Katz* is from a judgment entered on or about August 12, 1966, which granted petitioner's motion to validate the initiative petition and to require respondent-appellant Katz, as City Clerk, to certify to the City Council of the City of New York, that said petition complies with all requirements of law, that such respondent-appellant forthwith recall his original certificate and issue a certificate duly certifying the validity of such petition.

In the companion appeal (*Matter of Monplaisir* v. *Katz*) the appeal, by permission, is from an order entered on or about August 12, 1966, similarly declaring the validity of a petition filed under section 37 of the Municipal Home Rule Law and which partially nullified the certificate of the City Clerk to that extent.

Sometime about May 17, 1966, the Police Commissioner issued General Order No. 14, which established an Advisory Review Board to review civilian complaints against the police. Such board was to consist of three members appointed by the Commissioner and four members appointed by the Mayor. Such board would function in an advisory capacity to the Commissioner.

Thereafter, and on or about July 7, 1966, the two initiative petitions herein involved were filed purportedly pursuant to section 37 of the Municipal Home Rule Law, for submission to the electorate at the next general election as proposed local laws.

The Cassese petition entitled "A Local Law to amend the New York City Charter in regard to the establishment of a *procedure* for handling *civilian complaints* against members of the police department" (emphasis supplied), would require, *inter alia*, that any board to review civilian complaints against members of the Police Department be comprised of persons who are, and have been for one year prior to such appointment, full-time members or administrative employees of the Police Department. It is requisite that such persons, so appointed, continue in service during the term of his or her appointment. The expressed policy in such proposed law is to preserve the independence and integrity of police service. As to that phrase, i.e., the policy, it is worth noting that section 1124 of the Charter of the City of New York (the Charter) expressly preserves the rights of officers and employees granted under section 15 of the Civil Rights Law. Limitations and restrictions upon the appearance of policemen before bodies or persons are contained in the proposed law. The Cassese petition and proposal will hereinafter be referred to as Local Law No. 1.

The Monplaisir petition and proposed local law (herein Local Law No. 2) is entitled "A Local Law to amend the New York City Charter *in relation to the disciplinary procedures* of the New York City Police Department, prohibiting the creation or maintenance of a civilian complaint review board composed of members who are not deputy police commissioners" (emphasis supplied). The title is descriptive of the objective.

Section 37 of the Municipal Home Rule Law (L. 1963, ch. 843) (Home Rule Law) entitled "Provisions for adoption of city charter amendments or new city charters initiated by peti-

tion " provides, in part: " 1. A local law amending a city charter (however extensively) or providing a new city charter, also may be adopted in accordance with the provisions of this section." Such section sets forth the manner of indicating new matter or deleting old matter, and provides further (in subd. 4) that such a local law " may amend, repeal or supersede any local law inconsistent with the charter amendment or new charter proposed ", etc.

" Charter " is defined in subdivision 1 of section 2 of the Home Rule Law. " ' Charter.' A state statute or a local law which establishes or continues a specific county, city or village as a municipal corporation or body politic and includes the fundamental provisions defining, extending or limiting its corporate powers or affecting the framework of its government." Charter amendment is defined in subdivision 2 of section 2. " ' Charter amendment.' A new charter or any change in an existing charter presented as such under authority of this chapter or any state statute or charter. A charter amendment may be of any extent and may deal with any number of subjects ".

Appellant's chief argument is that the proposed local laws do not amend the charter within the meaning of section 37 of the Home Rule Law and therefore initiative and referendum may not be used. Appellant contends the proposed laws really amend the Administrative Code of the City of New York.

Chapter 18 of the charter (a short-form charter) entitled " Police Department " contains nine sections, one of which, section 434, deals directly with the Police Commissioner as related to the problem before us. Section 434 " Commissioner; powers and duties.— a. The commissioner *shall have cognizance and control of the government, administration, disposition and discipline of the department, and of the police force of the department.* b. The commissioner shall be the chief executive officer of the police force. He *shall* be chargeable with and responsible for the execution of all laws and the rules and regulations of the department." (Emphasis supplied.)

Chapter 18 of the Administrative Code of the City of New York, entitled " Police Department ", deals fully and at length with the police department as regards composition, qualifications, pension, etc. and specifically provides for " Discipline of members " (§ 434a–14.0). Under subdivision a of section 434a–14.0, " the commissioner shall have power, in his discretion, on conviction by him, or by any court or officer of competent jurisdiction, of a member of the force of any criminal offense, or neglect of duty ", etc. to punish the offending party in a manner there set forth. Subdivision b safeguards the members of the force by providing that such members, " except as elsewhere pro-

vided herein ", can be disciplined " only on written charges made or preferred against them, after such charges have been examined, heard and investigated by the commissioner, one of his deputies or the assistant to the commissioner, upon such reasonable notice " given, " and in such manner or *procedure,* practice, examination and investigation as such commissioner may, by rules and regulations, from time to time prescribe " (emphasis supplied).

In seeking to determine if the proposed local laws fall within the orbit of section 37, we try first to ascertain what evils, if any, that section was designed to cure or prevent, then look to the nature of the proposed laws, what they are designed to accomplish and whether they are, in reality, amendments to the charter.

The Legislature authorized the short-form charter and the Administrative Code as separate documents for the City of New York (L. 1936, ch. 483; L. 1937, ch. 929). Not all cities have such separate documents. In 1937 the Legislature extended to all cities the power to amend a city charter by initiative and referendum (L. 1937, ch. 479). In 1944 the Legislature amended section 19-a of the City Home Rule Law (predecessor statute to § 37) by the addition of the words " however extensively ". In 1957, section 19-a (now § 37) was again amended to extend the power of charter amendment by petition to include new charters (L. 1957, ch. 1027). The legislative note contained in chapter 1027 throws some light on the reason for these amendments. It states, in part: " The addition of a new charter to the scope of this section is not an extension of the intended coverage of the section but a clarification to avoid unintended limitations by court decision. The legislature often adopts complete revisions of laws as measures to amend such laws generally. Despite this precedent, in 1940 a proposed extensive revision of a city charter presented in amendment form, was thrown out by the courts as in fact not an amendment but a new charter (Maylender v. Morrison, 1940, 260 App. Div. 892, 22 N. Y. S. 2d 555, affirmed 284 N. Y. 575, 29 N. E. 2d 395.) In 1944 *the legislature sought to overcome this decision* by inserting the words ' however extensively ' after ' amending a city charter ' in the paragraph above, and some extensive charter revisions have been adopted under the provisions of this section since that time. However, in 1945 a court held that this amendment left unchanged the distinction between the adoption of a new charter and adoption of amendments, though amendments may be extensive as well as numerous (Application of Grenfell, 1945, 185 Misc. 558, 57 N. Y. S. 2d 284). It is now proposed to

authorize the adoption of a new charter so that an extensive revision may for convenient use reproduce an entire charter with the proposed changes, as did the proposal invalidated in the *Maylender* case, without running the danger of being disqualified as a new charter rather than an amendment.'' (Emphasis supplied.)

The charter is the city's constitution and its fundamental organic law. The code complements and elaborates upon the powers therein given. The charter is also the source of the power of the Police Commissioner. The code elaborates upon that power and declares conditions precedent to discipline the members of the police force. There are no barriers to the Commissioner's seeking advice, nor is it mandated that he seek advice, though his is the ultimate power and responsibility. Since 1953, there have been procedures established in the Police Department for review of civilian complaints, and such procedures have been by administrative orders.

Examination of the prososed local laws reveals that neither purports to take away the disciplinary power of the Commissioner. Each would bar advice from a particular source in complaints falling within a special category, i.e., civilian complaints. Proposed Local Law No. 1, with the Cassese petition uses the term '' may '' with respect to establishment of a review board, while recognizing the power of the Commissioner to establish such board. Thus it does not compel or prohibit the establishment of a review board. It would however, as would the companion petition, and Local Law No. 2, limit the class of persons qualified to serve on such board or recommend action. Conditions precedent to discipline resulting from civilian complaints would be established by limiting recourse, initially, to a selected class of persons. Others could not investigate, hear or even recommend. As the titles and the contents of the proposed laws indicate, additional procedural barriers are erected prior to any disciplinary action upon civilian complaints. The basic power remains untouched, though the proposed laws seek to limit or channel its exercise as to sources of advice and recommendation. Local Law No. 1 also contains some of the provisions of section 434a–14.0 of the Administrative Code. It is the essence of the proposed laws, not their title, self-characterization or self-identification as a '' charter amendment '' which should control (cf. *Matter of Astwood* v. *Cohen*, 291 N. Y. 484 [1944]).

In *Matter of Astwood* v. *Cohen* (*supra*), which involved the question whether a proposed local law was an amendment to the City Charter of New York within the meaning of section 19-a (predecessor statute to § 37), THACHER, J., speaking for the

majority, laid down certain guidelines. He noted (p. 488) amendments need not be those which affect structure only, and that the Legislature had "sharply distinguished between the Charter of the city and the Administrative Code." Acknowledging the argument for a liberal construction, he observed: "liberal construction may not, however, ignore the legislative mandate that only amendments to the charter, as distinguished from other laws, may be enacted by the process of initiative and referendum. * * * The facts which control will be found in the nature of the proposed local law and its relation to the provisions of a particular city charter. The most that can be said is that in the consideration of these controlling facts will be found the basis for determination as to whether in the particular case the proposed law is in truth an amendment of the Charter or is so far unrelated to the Charter as to be an amendment only in name." The legislative note to the 1957 amendment of section 19-a (now § 37) indicates the amendment of 1944 was directed to the *Maylender* decision (*Maylender* v. *Morrison, supra*). No mention is made therein of *Matter of Astwood* v. *Cohen.* Moreover, legislation similar to that adopted in 1944 had been proposed in 1943 but had been vetoed by the Governor. (Sen. Int. No. 252 by Mr. Desmond.) The letters referred to in the respective briefs merely indicate what the authors of such communications believed the effect of the legislation might be. Most recently, the test enunciated in *Matter of Astwood* v. *Cohen* (*supra*), seems to have been applied in *Hacker* v. *Common Council of City of Ithaca* (49 Misc 2d 69, 74).

*Matter of Warden* (*Newburgh Police Dept.*) (300 N. Y. 39 [1949]) may be distinguished. In that case, the court in upholding a proposed charter amendment by local law, noted (p. 42): "The Charter of the City of Newburgh is no mere skeleton or framework of governmental structure like the Charter of the City of New York. * * * Furthermore, the City of Newburgh has no administrative code such as was enacted to harmonize with the short-form Charter of the City of New York." The effect of the section upon such a short-form charter was expressly left open.

In the various alterations which the section (§ 37) has undergone, the term "amendment" or "amending" has been retained. Amendment in its simplest sense involves change. No change in the charter would actually occur by reason of the proposed local laws. Changes would be effected, however, in the Administrative Code. Nor are the proposed laws so naturally connected or bear such reference to the charter provision

as to be considered properly related thereto save in the minimal sense of self-characterization. This is not that degree of relationship contemplated by the statute. In *Matter of McCabe* v. *Voorhis* (243 N. Y. 401, 413) the court observed: "Government by representation is still the rule. Direct action by the people is the exception."

A charter, as Yokley points out, is a legislative grant of power to a local agency of government whose purpose is to delineate and circumscribe the powers and duties of the particular corporation. The twin purpose of the corporation is to serve as a State agency for a more efficient medium of government at the local level, coupled with a direct control over the affairs of the inhabitants therein, as distinguished from those matters which need State supervision. (See generally, 1 Yokley, Municipal Corporations, §§ 6, 38, 40.)

The term "charter amendment" while broad, is hardly intended to be an umbrella for change whatever its nature and wherever applicable, i.e., whether to charter or code. If the exercise of discretion or of a proper power by an official may be curtailed by the mere attachment of a label to a proposed law, there is doubt that the corporation could function as an efficient medium of government. The area of responsibility will become so diffused or uncertain as to invalidate the power. In this particular case, the Commissioner's independent judgment on matters in the area of his expertise would be denied expression if every procedural change, popular or unpopular, could be nullified by initiative and referendum. The changes contemplated are really amendments to the code and to General Order No. 14. In light of the legislative history of section 37, the object sought to be achieved by nullifying the effect of a judicial determination and affording broader opportunities to the electorate for charter amendment, or even a new charter, but meanwhile retaining by implication, the limitation that the proposed local law actually be an amendment to the charter, it would seem that the standards enunciated in *Matter of Astwood* v. *Cohen* (*supra*), retain validity. If this were not so, the Legislature might easily have so indicated by very simple language; for example, the city charter may be amended (however extensively) by *any* local law. This, it did not do even in 1957. It evidently intended the guidelines of *Astwood* to remain.

The Administrative Code became a law December 30, 1937 (L. 1937, ch. 929), after having been passed by a two-thirds vote of the Legislature. The charter itself had been approved November 3, 1936, by a referendum. In its report to the Legislature

dated December 16, 1937, the Board of Statutory Consolidation referred to the duty assigned to it (L. 1936, ch. 483, § 2) of preparing an administrative code '' which shall harmonize with the provision of such charter which may be so voted.''

'' It must be borne constantly in mind that the New Charter was intended only to outline in skeleton form the different agencies of the city government and their basic functions. It does not purport to embody all of the provisions of law relating to the government of the city. It provides the structural framework of the city government and is intended to set forth the organic law relating to the city.'' (See, Report, p. XL, L. 1937, Extraordinary Session.) '' An analogy might be made in describing the relationship between the Administrative Code and the Charter of the City of New York, as on a par with the relationship between the statutory law, and the constitution of a sovereign body, wherein those provisions which were intended to be flexible and to yield to changing conditions would be subject to easy amendment, while primary grants of powers and important limitations upon abuses of power would be contained in a body of law which would express fundamental principles and ideals of government. These would not be expected to change except over long periods of time '' (*ibid.*, p. XLI, note: the complete report is contained in N. Y. Legis. Doc., 1938, No. 56). The report referred to views entertained by former Mayor Mitchell, then deceased, that the Administrative Code should correspond to the by-laws of a corporation; easily amendable. The Legislature in accepting the report and enacting the code into law presumably acquiesced in the views expressed in the report. Earlier in 1937, the Legislature had extended to all cities the power of charter amendment by initiative and referendum (L. 1937, ch. 479), and there is no indication that the legislative body intended such power to be exercised lightly or whimsically. Nor is article IX of the New York State Constitution, dealing with '' Local Governments '' of assistance in light of the peculiar nature of the problem here presented. In the particular aspect of the law as here applicable no fundamental change was made.

The City of New York is not a sovereign power but a corporate creature of statute. To hold otherwise than as we now conclude could result in hundreds of so-called amendments being proposed each year which, if enacted, could destroy representative government.

For all of the reasons heretofore stated I dissent in each appeal, vote to reverse and dismiss the respective petitions so far as each is appealed from.

Botein, P. J., McNally and Capozzoli, JJ., concur in *Per Curiam* opinion; Stevens, J., dissents in opinion, in which Rabin, J., concurs.

Judgment and order affirmed, without costs and without disbursements. Leave to appeal to the Court of Appeals in second above-entitled proceeding on certified question granted.