OPINION OF THE COURT
Eugene R. Wolin, J.
Petitioner has brought this proceeding for an order in the nature of mandamus directing the Clerk of the City of New York (the Clerk) to certify as valid and transmit to the City Council of the City of New York (the City Council) an initiative for a proposed amendment to the New York City Charter (the Charter).
Petitioner individually and on behalf of an organization known as the Committee for New York’s Future is the sponsor of an initiative which seeks to amend chapter 24 of the Charter. That chapter (§ 601 et seq.) consists of four sections which establish the Department of Social Services (§601), places the Commissioner of Social Services (the Commissioner) at the head of that department (§ 601) with a broad grant of power and authority to the Commissioner (§ 603). The initiative would amend section 603 of the Charter to require the Commissioner to provide every homeless family with an enclosed separate sleeping area (homeless family initiative).
The procedure for placing an initiative on the ballot for public referendum is set forth in Municipal Home Rule Law § 37. Upon the filing with the Clerk of a petition signed by 30,000 registered voters, the Clerk is required to transmit the proposed local law to the City Council for its consideration and possible adoption (Municipal Home Rule Law § 37 [6]). With that transmittal the Clerk is further required to certify whether or not the initiative complies with the requirements of law (Municipal Home Rule Law § 37 [5]). Although the City Council is not bound by the certification of the Clerk as to the validity of the proposed local law, the certification of the Clerk does affect the ability of a sponsor of an initiative to place the initiative before the electorate. If the Clerk certifies that an initiative meets all the requirements of law, then the City Council would have a period of two months to either adopt the initiative without change or to submit it to the electorate. If the City Council fails to take any action, the initiative may be placed on the ballot by the filing of an additional petition signed by 15,000 registered voters (Municipal Home Rule Law § 37 [7]). A certification that a proposed local law is not valid affects the rights of the sponsor of the initiative and may be *65 challenged in a proceeding in this court (Municipal Home Rule Law § 37 [5]). Further, the court may take cognizance of the expense and effort involved in placing an initiative before the voters. Effort which would be wasted if there were fatal defects in the proposed local law. Thus, this proceeding presents a justiciable controversy and does not merely seek an advisory opinion as to the validity of the proposed law from the judiciary. (Matter of Fosella v Dinkins, 66 NY2d 162; Matter of McCabe v Voorhis, 243 NY 401; but see, Matter of Reuss v Katz, 43 Misc 2d 921, affd no opn 21 AD2d 968). With respect to the homeless family initiative the Clerk initially certified that the petition did not contain the requisite number of valid signatures. This certification was later supplemented by an objection that the homeless family initiative failed to comply with the requirements of law. The factual issue as to the number of signatures was referred to a Special Referee to hear and report. During the course of the hearings before the Referee, the respondents conceded that the petition contained the requisite number of valid signatures. This was so reported by the Referee and his report is hereby confirmed and adopted. The respondents continue to press two objections in law to the homeless family initiative: first, that it is not a proper subject for an amendment to the Charter, and, second, that it fails to provide a sufficient financing plan as required by Municipal Home Rule Law § 37 (11).
I. THE SUBJECT MATTER OBJECTION
The Constitution vests the power to legislate in a representative Legislature not the people (NY Const, art III, § 1). The legislative authority of the City of New York has been placed in the City Council (Charter, ch 2, § 21). To the extent that there may be direct legislative action by the people, that authority must rest upon a specific constitutional or statutory grant (Matter of McCabe v Voorhis, 243 NY 401, 413, supra). The authority for the initiative and referendum procedure is found in Municipal Home Rule Law §37. Subdivision (1) of that section permits a referendum to be submitted to the electorate for adoption of "[a] local law amending a city charter (however extensively)”. The parenthetical phrase "(however extensively)” was added to the then controlling law (former City Home Rule Law § 19-a) in 1944. This amendment eliminated the "legislative/administrative” test enunciated by the Court of Appeals in Matter of Astwood v Cohen (291 NY 484). The proposed local law at issue in Astwood would have *66 given a salary bonus to members of the Police and Fire Departments in the City of New York. The court examined the proposed local law and its relation to the provisions of the Charter to determine whether the proposed local law was in truth an amendment to the Charter or so far unrelated to the Charter as to be an amendment only in name (Matter of Astwood v Cohen, 291 NY, at pp 487, 488). In striking down the proposed local law, the court found that the Charter was a "short form” document which contained the fundamental and organic law of the City of New York; statutes governing the operation of city government were to be found in the Administrative Code of the City of New York (Administrative Code). The Astwood court then held that the proposed local law did not alter or amend anything in the Charter but rather related directly to provisions found in the Administrative Code. As noted, the inclusion of the phrase "however extensively” drained much of the vitality from the Astwood decision. The "legislative/administrative” test was thereafter repudiated by the court in Matter of Warden (Newburgh Police Dept.) (300 NY 39). Thus, insofar as a proposed local law seeks to amend an existing charter provision, it is irrelevant to the analysis whether the proposed local law is legislative or administrative in nature (Matter of Warden [Newburgh Police Dept.], 300 NY 39, 43). The question expressly left undecided by Warden is whether an amendment to a short-form charter consisting of matter which is unrelated to existing charter provisions may be adopted by initiation and referendum (Matter of Warden [Newburgh Police Dept.] 300 NY, at p 43). The petitioner relies upon the later decision in Matter of Cassese v Katz (26 AD2d 248, affd 18 NY2d 694) as authority for the position that a restriction upon the general grant of power to a commissioner of an administrative agency is a proper subject of a charter amendment. The Cassese case concerned a referendum to establish a review board to investigate complaints of brutality committed by members of the police force of the City of New York. Chapter 18 of the Charter governs the police department and a specific provision, section 434, gives the Police Commissioner authority over disciplinary matters. It is clear from the decisions of both the Appellate Division and the Court of Appeals that the proposed referendum was held to affect the plenary power of the Police Commissioner to discipline members of the force. As such the proposed local law related to an existing charter provision and was thus subject to amendment by the initiative and referendum proce *67 dure. Thus, Cassese is squarely within the parameters of Warden and the question left undecided by Warden remains unresolved by the Court of Appeals. Therefore, to hold that the homeless family initiative is a proper subject for a charter amendment, the court must find either that it relates directly to an existing Charter provision, or, if it is unrelated, that an amendment unrelated to an existing provision may be adopted by the initiative and referendum procedure.
A fair reading of chapter 24 of the Charter indicates that it is a broad grant of power to the Commissioner of the Department of Social Services and that the chapter is a bare framework for the authority of the Commissioner rather than a detailed recitation of his powers and duties. There is no reference to any of the varied functions, programs and services to be provided by the department or the duties of the Commissioner with respect thereto; further, there is no specific reference to the homeless or to programs and services to be implemented for the homeless. The relevant statutes and regulations concerning shelter facilities and other programs for the homeless are to be found in the Administrative Code and in the New York Code of Rules and Regulations. Based upon a plain reading of chapter 24 of the Charter and the proposed local law, the court concludes that the homeless family initiative is not directly related to an existing provision of the Charter.
As to the second point, the court is not persuaded that amendments to the Charter which are unrelated to existing provisions may be adopted by initiative and referendum. Municipal Home Rule Law § 37 (1) provides for a local law amending a city charter. A "Charter amendment” is defined pursuant to Municipal Home Rule Law § 2 (2) as "[a] new charter or any change in an existing charter”. Expressly excluded in the definition of local law is any "ordinance, resolution or other similar act of the legislative body or of any other board or body.” (Municipal Home Rule Law §2 [9].) Thus, there is support for the view that the limited authority for direct legislative action by the electorate should not be extended to matters unrelated to existing provisions of a city charter and which may impinge upon or restrict the exercise of power and discretion by the local legislative body. The rule articulated in Matter of McCabe v Voorhis (243 NY 401, 413, supra) remains in effect: direct legislative action by the people is an exception to the general rule of representative democracy. To the extent that Matter of Astwood v Cohen (291 NY *68 484, supra) retains any vitality, it is as a cautionary note to permitting the people to legislate directly on the nature and implementation of administrative programs (see also, Matter of Cassese v Katz, 26 AD2d 248, 255 [Stevens, J., dissenting opn], supra). The homeless family initiative would not merely change or reorganize the Department of Social Services but would directly involve the electorate in the choice and implementation of a major social services program. Nothing in the Constitution, the Municipal Home Rule Law, the Charter or in the case law interpreting those laws warrants a holding which would so greatly expand the permissible scope of the initiative and referendum procedure.
II. THE FINANCING PLAN OBJECTION
Municipal Home Rule Law § 37 (11) provides that: "No such petition for a proposed local law requiring the expenditure of money shall be certified as sufficient by the city clerk or become effective for the purposes of this section unless there shall be submitted, as a part of such proposed local law, a plan to provide moneys and revenues sufficient to meet such proposed expenditures. This restriction shall not prevent the submission of a local law to adopt a new charter or to reorganize the functions of city government, or a part thereof, relying partly or solely on normal budgetary procedures to provide the necessary moneys to meet the expenses of city government under such reorganization, whether or not such reorganization includes the creation of new offices, provided only that such reorganization shall not require specific salaries or the expenditure of specific sums of money not theretofore required.”
The necessity for including a financing plan in an initiative is evident: the electorate must be given sufficient information as to the economic impact of the proposed law to enable the voters to exercise their franchise intelligently (Matter of Hardwick v Kramer, 200 Misc 207, affd 278 App Div 1040, affd 303 NY 605; Welty v Heafy, 200 Misc 1010, affd 279 App Div 662). Without an adequate financing plan an initiative cannot become law even if it were to be ultimately adopted by either the City Council or by referendum (Matter of Hardwick v Kramer, 200 Misc 207, 213, supra).
The financing plan submitted for the homeless family initiative provides:
"4. (a) The expenditures by New York City necessary to *69 provide such shelter will be approximately $30,000,000 per annum, the necessary funds to be provided pursuant to New York State Social Services Law § 91 or from the general fund, as the City Council shall deem appropriate.
“(b) To the extent that the plan described in the preceding sentence may not provide sufficient funds for such expenditures, the City Council shall enact a local law to raise the income tax on residents and/or the earnings tax on nonresidents and, if necessary, shall take steps to obtain additional authority to impose such taxes.”
In response to the challenge to the sufficiency of the financing plan petitioner argues that the homeless family initiative is in essence a reorganization of the functions of the Department of Social Services. Therefore, the second sentence of section 37 (11) controls and a financing plan is not required. Alternatively, it is contended that the financing plan submitted satisfies the requirements of the statute.
The argument that a financing plan is not required is not well taken. The question of whether the proposed amendment calls for the expenditure of money must be determined from the wording of the initiative and not from any speculation as to its ultimate effect. If the exact wording calls for an expenditure of money that is sufficient to trigger the statutory requirement of a financing plan (Matter of Noonan v O’Leary, 206 Misc 175, affd 284 App Div 646). The homeless family initiative clearly requires an expenditure of $30 million. However, even assuming that no reference were made in the text of the initiative, to an expenditure of money, the second sentence of section 37 (11) would still not be applicable and a financing plan will be required. Adoption of the homeless family initiative would require the Commissioner of the Department of Social Services to provide a specific type of shelter and a specific type of social services program. To effectuate the purpose of the initiative, an internal reorganization of the Department of Social Services would not be necessary. Nor would implementation of the initiative involve any change in a fundamental function and purpose of the department, i.e., to provide shelter and care for the homeless. The change would merely be in the nature and extent of the services provided. To follow the argument to its extreme, any change in the nature or type of social services provided by the programs administered by the Commissioner would be a reorganization of the functions of the department. This position is not in *70 accord with the reality of administrative agencies and strains statutory construction beyond the breaking point.
With respect to the sufficiency of the financing plan, petitioner argues that providing an enclosed separate sleeping area for each homeless family is actually the least expensive form of shelter and that adoption and implementation of the initiative would in fact save the city money. Thus, the existing budgetary resources available from Social Services Law §91 would be adequate to defray the necessary expenditures entailed by implementation of the initiative. In further support of this position, petitioner refers to a statement contained in the message of the Mayor in the City of New York executive budget fiscal year 1987 (budget message). Finally, petitioner points to the provision for an increase in the resident income tax and the nonresident earnings tax. These tax increases would provide additional revenue in the event that revenue from the Social Services Law or the general fund was inadequate. These arguments must fail.
A financing plan which merely provides that increased revenues be made available from the general budget is insufficient to satisfy the statute (Matter of Hardwick v Kramer, 200 Misc 207, supra). As indicated, the exact words of the financing plan require an expenditure of $30 million and provides in the first instance for funding from the State through Social Services Law § 91 and the general budget of the city. Whether the proposed local law, which would adopt a mandatory social program for an increasing population, would effect a saving sufficient to offset any expenditure necessary to implement the initiative is a matter which is open to speculation. Petitioner has failed to establish any factual basis which would require a hearing on the cost of implementing the initiative (City of Syracuse v Wright, 4 Misc 2d 714). His reliance upon the budget message of the Mayor is misplaced. That document simply states that: "family centers, which offer the least costly form of transitional housing for homeless families” (City of New York executive budget fiscal year 1987 message of the Mayor, at 110). The message of the Mayor further states that the number of homeless families has doubled since 1983, that the number is expected to increase by at least 20% in 1987 and that because of the shortage of permanent low-income housing the rate at which homeless families move out of the system is slow and not equal to the number of new homeless families entering the system. Thus, there is no factual basis to conclude that the homeless family initiative will ultimately *71 prove less expensive than the present program or that the projected cost of $30 million is accurate. Neither the court nor the Clerk nor the electorate should be permitted or required to speculate as to future savings to be derived from the initiative or as to the most economical method of providing shelter for homeless families (Matter of Noonan v O’Leary, 206 Misc 175, affd 284 App Div 646, supra).
The financing plan also provides for an increase in the resident income tax and the nonresident earnings tax. These taxes cannot be increased without the approval of the State Legislature. By designating these taxes rather than permissive taxes available to the City without the approval of the State Legislature, the homeless family initiative has restricted the discretion and the ability of the City Council to provide financing for the initiative. If the revenue available from the State through the Social Services Law and from the general budget were to prove inadequate, no additional revenue would be available if the State Legislature were to refuse to approve an increase in these designated taxes in a sufficient amount. It is no answer to argue, as counsel did during argument, that the city and the State "will work something out.” That is not what the statute requires nor does it permit the electorate to make informed choice.
The court therefore holds that the homeless family initiative is invalid in that it is neither a proper subject for amendment to the Charter nor does it, as drafted, contain a sufficient financing plan.
Accordingly, the petition for an order of mandamus is denied and the proceeding is dismissed.