Francis T. Murphy, Jr., J.
In this proceeding instituted pursuant to article 78 of the CPLR the petitioners seek an order in the nature of mandamus, to compel the City Clerk and the Board of Elections of the City of New York to accept its petitions and to place on the ballot for referendum in the November election the question of the establishment of a new municipal office to be known as the “Anti Vietnam War Coordinator”. By cross motion the respondents have moved to dismiss the petition.
Prior to the instant application and in accordance with section 42 of the New York City Charter, the petitioners presented the respondent City Clerk with petitions purportedly bearing the signatures of some 93,000 qualified New York City voters.
In essence, the petitioners sought to have placed upon the ballot, for consideration by the electorate, the establishment of a new municipal office, to be known as the 1 ‘ Anti Vietnam War Coordinator ”. The scope of the powers and duties of the .new “Coordinator” as proposed by the petitioners was to
“ (a) * * * publicly demand at appropriate times and places the immediate withdrawal of United States troops from Vietnam.
“(b) * * * [to] make studies and periodic public reports on how money spent on war in Vietnam could be used for such social benefits as school and housing construction, and improved hospital and medical facilities for the people of New York City.
“(c) * * * [to] take other appropriate actions to support the immediate withdrawal of United States Troops from Vietnam.
‘ ‘ Section 2. With regards to the amendment, the expenditure of ten thousand dollars for salary and any other incidental expenditures and the plan to provide funds for the same shall be obtained from general taxation from real estate.”
*958 The respondent City Clerk rejected the petitions without an examination either of the quantity or genuineness of the signatures. The grounds upon which the respondent refused acceptance of the petitions were set forth as follows:
“ 1. The purposes set forth in the proposal are not within the jurisdiction, frame or authority of the local government of the City of New York.
‘ ‘ 2. The described purposes are not within the basic structure, purposes or grant of the powers to the Government of the City of New York.
“ 3. The proposals set forth in the petition are not concerned with the basic structure of the New York City Government, its property or affairs.
“ 4. The proposed amendment relates to matters which are within the exclusive jurisdiction and authority of the Federal Government.
“5. The purpose and result of submitting the proposed amendment are principally to seek an advisory opinion of the electorate with respect to the Federal Government policy concerning the presence of United States troops in Vietnam.”
Quite obviously, United States policy in Southeast Asia, and this country’s participation in Vietnam, are of utmost concern to our citizens, resulting in a polarization of opinions. The inalienable right to uncensored expression and the right to citizen petition are basic tenets of a democracy. Courts have consistently rejected attempted limitations of these rights, a position in which this court emphatically joins. But the question here presented involves not a threatened suppression of these decreed rights." Rather the issue is the more restricted one of whether the petitioners have clearly demonstrated that the respondent City Clerk and Board of Elections of the City of New York have breached a legal duty imposed on them by law in rejecting the petitions as filed.
Petitioners argue that the respondent Clerk in rejecting the petitions on substantive grounds exceeded his authority, for his is purely a ministerial function. Despite the validity of this argument it is to be remembered that while the Clerk is a named respondent, the relief sought directly affects all of the citizens of this city. Under the circumstances the petitioners must prove a clear legal right to such relief within the framework of our charter. In making this determination the court will not exalt form over substance nor overlook the obvious intent of petitioners even where artfully concealed within the basic right of free speech and protest.
*959 The enactment of purely advisory resolutions by local municipal bodies of New York State, upon petition of the electorate, is proscribed by the Municipal Home Rule Law (§ 2, subd. 9, par. [b]). In Matter of Kupferman v. Katz (41 Misc 2d 124, affd. 19 A D 2d 824, affd. without opn. 13 N Y 2d 932), the Appellate Division stated: “It is clear enough that in the absence of express statutory authority, an advisory referendum by a city is not authorized (Mills v. Sweeney, 219 N. Y. 213, 221). It is also clear that the City of New York possesses no such authority. It is equally clear that a legislative referendum is not authorized unless specifically required by statute (Matter of McCabe v. Voorhis, 243 N. Y. 401, 413, involving an abortive attempt to submit to the public the question of a rapid transit fare increase). It has also been held that a transparent attempt to formulate a mandatory legislative referendum on some technical basis will not suffice, if in fact the attempt is really to avoid governmental responsibility and shift the burden of decision to a public poll (Matter of Astwood v. Cohen, 291 N. Y. 484, 490-491).” (See, also, Mills v. Sweeney, supra).
Ingeniously, petitioners seek to avoid this restriction by addressing the petitions to the establishment of a new City office, purportedly pursuant to paragraph (b) of subdivision 2 of section 42 of the New York City Charter. "Whether this constitutes a “transparent attempt” to avoid the above holding is but one of the issues posed by the instant application.
Analyzing the proposed duties of the Co-ordinator, it is clear that what the petitioners really hope to accomplish is an opportunity to obtain a vote on the national administration’s policy and its conduct of the war in Vietnam. All else would appear to be incidental.
Petitioners’ reliance upon Matter of Cassese v. Katz (26 A D 2d 248, affd. 18 N Y 2d 694), to support the claimed right to a referendum upon matters of general public policy, is not compelling. There, the question ultimately put to the public concerned the manner of handling civilian complaints against the Police Department of the City of New York. The Appellate Division stated (pp. 250-251) that “it seems plain that each of the two proposals has a direct relation to, and would alter or change, existing charter provisions. Section 434 of the charter provides that the Police Commissioner shall have cognizance and control of the government, administration, disposition and discipline of the Police Department and of the police force. Sections 1102, 1130 and 1105 grant the Commissioner, as head of his department, a panoply of powers with respect to the organization of his department, the assignment of duties to his *960 subordinates, and the making of rules and regulations for the conduct of his office and the carrying out of its powers and duties. Manifestly the two proposals are related to the authority granted to the Commissioner by the provisions of the charter and alter or change them by restricting his authority.”
With particular reference to the types of questions that may be presented to the electorate, the court further stated (p. 250) that “as we read the opinions of the Court of Appeals, it would appear that the short-form charter of the City of New York may be validly amended by the procedure of initiative and referendum if the proposed local law, whether of a ‘ legislative ’ or ‘ administrative ’ character, alters or changes any provision contained in the charter, although it would appear to he an open question whether additions to the charter unrelated to its existing provisions .may he accomplished hy such procedure.”, (Emphasis added.) The distinction, then between the issue in Cassese and the question presented in the instant proceeding is obvious and indeed was the subject of the emphasized express reservation by the court in Cassese. The language of the court in Kupferman, however, appears more appropriate and indeed dispositive.
Petitioners urge that since the petition was brought pursuant to section 42 of the City Charter, rather than section 37 of the Municipal Home Buie Law as in the Cassese case, the limitations upon the use of the initiative and referendum alluded to by the court in Cassese are inapplicable. The argument overlooks the fundamental question considered by the courts in Cassese and Kupferman, to wit, the propriety of using the municipal electoral processes for the purposes of obtaining expressions of opinion on matters beyond the effective power of the local body. Begardless of the section of the charter relied upon by the petitioners, if the local process may not be utilized for expressions of opinion on matters strictly national or international in character, but rather only to effectuate changes, alterations or modifications of the local government’s functions, then this petition must be dismissed.
Burke v. Kern (287 N. Y. 203), cited by petitioners in support of the claim that section 42 of the charter allows for a vote on a wider range of subjects, does not compel a different conclusion. That case involved the abolition of certain county offices and the creation of different ones to replace them. Significantly, each of the offices was concerned solely with the traditional function of local government. Thus, though the offices to be created were different, the roles to be performed were essentially similar. Again, each of the offices and roles affected by the ref *961 erendum in BurJce was within the power of the municipality or local body to implement.
Section 42 (subd. 2, par. [b]) of the New York City Charter provides that amendments to the charter may be adopted by vote of the electors of the city, upon their petition, ‘1 in relation to the manner of voting for the elective officers of the city or any of them, or (b) abolishing any elective office or offices or creating a new office or offices, including if so provided a transfer of powers to the newly created office or offices or a disposition of the powers of any office abolished, but no such amendment shall repeal or change any limitations contained in this charter on any power.” (Emphasis added.) The charter contains no language allowing for a referendum to declare policy. Petitioners urge however, that the New York City Charter is similar to the Charter of the City of San Francisco and that the issue was determined by the Supreme 'Court of the State of California in the case of Farley v. Healy, decided September 18, 1967.
In the California case, a petition to place an initiative measure on the ballot urging an immediate cease fire and American withdrawal from Vietnam was held proper. The resolution was purely advisory, with no office to be created. The Charter of the City of San Francisco specifically provided that “ Any declaration of policy may be submitted to the electors in the manner provided for the submission of ordinances; and when approved by a majority of the qualified electors voting on said declaration, it shall thereupon be the duty of the board of supervisors to enact an ordinance or ordinances to carry such policies or principles into effect, subject to the referendum provisions of this charter.” (Emphasis added.)
Clearly the pertinent portion of the San Francisco Charter above quoted is much broader than the analogous provisions of the New York City Charter. Unlike the San Francisco Charter, our charter contains no provision for a “ declaration of policy ”, which for all practical purposes, is what is actually sought by the petitioners herein by referendum. Traditionally “ the scope of the initiative and referendum will be no broader than the power of the [local] legislative body * * * [though] a charter provision may allow a broader application of these powers”. (Note: The Scope of the Initiative and Referendum in California, 54 Cal. L. Rev. 1717, 1723.) The court in Farley (supra) in accordance with the language of the San Francisco Charter, held that although the board of supervisors of the city could not implement a resolution directed toward withdrawal of American troops from Vietnam, “ The *962 fact that the board’s duty ‘ to carry * * * into- effect ’ approved policies is inoperative when the policy is beyond the power of the board to effectuate, affords no basis for restricting the right to declare the policy.”
Petitioners recognize that the City of New York, like the City of San Francisco, is without the power to effectuate the withdrawal of troops from Vietnam. Petitioners contend, however, that the office of ‘ ‘ Anti Vietnam War Coordinator ’ ’ would be analogous to that of a legislative lobbyist who serves in Washington and Albany on behalf of New York City. The existing and proposed offices are not without distinctions. The jfforts of the legislative representatives of the City of New York are directed towards securing for New York City legislative enactments or administrative decisions which will benefit the city on a myriad of subjects. The policies upon which they seek implementation have been fixed by officials whose function is to administer the same. The “Anti Vietnam War Coordinator ”, it is argued, would be a lobbyist to secure action on a specific matter of policy, the administration of which is solely within the scope and power of the Federal Government and which affects the citizens of this jurisdiction no more or less than the citizens of any other municipality.
If the petitioners’ theory were accepted, could we then expect a referendum on every aspect of the Federal budget where money has been appropriated for use outside the City of New York? Was this what the majority of the electorate intended when they adopted the New York City Charter? This court thinks not.
The device sought to be utilized by petitioners — creation of a new office to perform functions clearly beyond the ambit and ability of the city to implement- — -is an obvious attempt to avoid the impact of well-established law and as such cannot be countenanced. Beyond that, logic demands that the court deny the imprimatur requested by the petitioners.
The office of “ Anti Vietnam Coordinator ”, as here proposed, deals exclusively with foreign policy, and is thus clearly beyond the jurisdiction of our municipal government. The painful emotions of war increase the need for perspective and for calm, reasoned thought. Expressions of opinion by our citizens in relation to foreign policy should be made known to duly elected representatives, be it their Senator, Congressman or the President of the United States. Constitutionally, these public officials have the power to act. It is their responsibility, upon consideration of public opinion and the facts known to them, to make decisions in the best interests of the country. The distinctive *963 ness and exclusive jurisdictions of the city, State and Federal .governments cannot be merged by tortured reasoning or by an abandonment of basic principles.
To grant the relief sought here, even if permitted by law, would result, if approved on Election Day, in nothing more than the creation of an office devoid of any power to effectuate its stated objectives. The net result at best would be a public opinion poll at taxpayers’ expense.
The application is in all respects denied, and the cross motion to dismiss the petition is granted.