Hon. Edward W. Mink Mayor, Warsaw
This is in response to your letter of September 19, 1979, concerning the continuation in office of the village attorney.
You state that your village attorney was convicted of two counts of income tax evasion, and you inquire what is the position of the village and if you can continue him as village attorney until the case is finally resolved. You also state that the conviction is being appealed and that sentencing will be deferred until the appeal is resolved.
An attorney convicted of a felony ceases to be an attorney, or to be competent to practice as such. Judiciary Law § 90, subdivision 4, paragraph e defines felony as follows:
 "e. For purposes of this subdivision, the term felony shall mean any criminal offense classified as a felony under the laws of this state or any criminal offense committed in any other state, district or territory of the United States and classified as a felony therein which if committed within this state would constitute a felony in this state."
The debarment is effective upon conviction and sentencing is not the controlling factor.
Similarly, Public Officers Law § 30, subdivision 1, paragraph e provides that every office shall be vacant when the incumbent is convicted of a felony.
Whether or not your village attorney has been convicted of felony cannot be ascertained from your letter. If he were convicted of a felony he would cease to be an attorney and would be incompetent to represent your village and, if fact, the office would be vacant. If the crimes of which he was convicted constitute misdemeanors, then debarment is not automatic but would depend on the outcome of debarment proceedings, if any, instituted in the appropriate Appellate Division, and the office would not be deemed vacant.
The village may, of course, if it chooses, designate another attorney as the village attorney and terminate its representation by the incumbent.
A town may not conduct an advisory referendum on a proposal to establish a shopping center since there is no statutory authorization therefor.
Dated: September 27, 1979
Frank J. Williams, Jr., Esq. Town Attorney, Guilderland
This is in response to your letters of September 4, 1979 and September 21, 1979, wherein you request my opinion as to whether the town board may hold a referendum to determine the attitude of the town citizenry on a proposal to establish a large shopping center within the town.
In the absence of express statutory provision, the holding of an advisory referendum by a municipality is not authorized. Meredith v Connally, 68 Misc.2d 956, 960 (Sup Ct Renss Co., 1972), aff'd 38 A.D.2d 385 (3d Dept, 1972); Silberman v Katz, 54 Misc.2d 956 (Sup Ct, N Y Co, 1967), aff'd without opinion, 28 A.D.2d 992 (1st Dept, 1967); Mtr of Town of Halfmoon, 81 Misc.2d 157 (Sup Ct, Saratoga Co, 1975).
Thus, we must first find either constitutional or statutory authority for a municipality to conduct a public referendum on any subject whatsoever and, in the absence of the same, it may not do so. We find no such constitutional or statutory authority in the situation posed by you.
In my opinion, an advisory town referendum on the establishment of a shopping center is neither authorized nor permissible.
The question: "Shall the Town of Riverhead support the nuclear power plant project at Jamesport by operating and maintaining a recreational facility at or near the nuclear plant site?" is not a question which may legally be submitted to a referendum in the Town of Riverhead when four years ago the town board had resolved to operate and maintain such a recreational facility and entered into a contract which contemplated doing so.
Dated: October 2, 1979
Henry S. Saxtein, Esq. Town Attorney, Riverhead
We acknowledge receipt of your letter asking whether a referendum may be conducted in your town upon the following resolution passed by your town board: "Shall the Town of Riverhead support the nuclear power plant project at Jamesport by operating and maintaining a recreational facility at or near the nuclear plant site?"
The resolution was prompted by an understandable concern in relation to possible proximity of a proposed nuclear power plant.
There was also submitted to us a copy of an agreement between the Town of Riverhead and the Long Island Lighting Company dated and acknowledged on September 5, 1975, signed by the supervisor of the Town of Riverhead and the executive vice-president of the Long Island Lighting Company. The acknowledgment of the signature of the town supervisor recites that he signed his name to the agreement by order of the town board. The agreement on pages 12 and 13, under the subheading "Conclusion", reads as follows:
"This agreement shall:
 "FIRST: Be read into and become a part of the record in the hearings now pending before the Board on Electric Generation Siting and the Environment.
 "SECOND: Be read into and become a part of the record in the hearings scheduled before the U.S. Nuclear Regulatory Commission.
 "THIRD: Be adopted by resolution of the Town Board of the Town of Riverhead and shall thereby be incorporated by reference in the Town Master Plan, financing and taxing policy and highway planning."
It is apparent from the agreement that the determination to operate and maintain the recreational facility was made four years ago.
The law in relation to municipal referenda is that a municipality may conduct a referendum only when there is a constitutional or statutory grant of authority; that government by representation is the rule and direct action by the people is the exception (Matter of McCabe vVoorhis, 243 N.Y. 401, 413 [1926]; Elkind v City of New Rochelle,5 Misc.2d 296, 300 [1957], affd 4 A.D.2d 761, affd 5 N.Y.2d 836;Kupferman v Katz, 19 A.D.2d 824, affd 13 N.Y.2d 932 [1963]; Silberman vKatz, 54 Misc.2d 956, affd 28 A.D.2d 992 [1967]).
We find no statutory or constitutional authority authorizing a referendum to repeal or revoke a four-year-old determination of a town board to operate and maintain a recreational facility.
In our opinion, the question: "Shall the Town of Riverhead support the nuclear power plant project at Jamesport by operating and maintaining a recreational facility at or near the nuclear plant site?" is not a question which may legally be submitted to a referendum in the Town of Riverhead when four years ago the town board had resolved to operate and maintain such a recreational facility and entered into a contract which contemplated doing so.