In the Matter of ROBERT HARDWICK et al., Petitioners, against BERNHARDT S. KRAMER, as City Clerk of the City of Kingston, et al., Respondents.

Supreme Court, Special Term, Greene County, September 17, 1951.

*Francis Martocci* for petitioners.

*James G. Connelly, Corporation Counsel,* respondent in person and for Bernhardt S. Kramer, respondent.

HAMM, J. This is a proceeding pursuant to article 78 of the Civil Practice Act in the nature of an application for an order of mandamus to compel the performance by public officers of alleged public duties. The respondents are the city clerk and the corporation counsel of the City of Kingston.

The petitioners are the president of the Uniformed Firemen's Association of Kingston, the president of the Kingston Patrolmen's Association and a member of a committee of patrolmen, firemen and citizens of Kingston which sponsored the preparation of a petition for increased salaries and additional increments for the patrolmen and the firemen.

In their effort to obtain increased compensation the petitioners proceeded under section 19-a of the City Home Rule Law, the pertinent provisions of which are: " A local law amending a city charter, however extensively, also may be adopted in the following manner: Qualified electors of a city, in number equal to at least ten per centum of the total number of votes cast for governor in such city at the last gubernatorial election, may file in the office of the city clerk a petition for the submission to the electors of the city of such a proposed local law to be set forth in full in the petition. * * * Such petition shall conform to the provisions of section sixteen in relation to petitions, it shall be examined and reported on by the city clerk as prescribed therein, and objections thereto shall be disposed of by the supreme court as prescribed by such section. The city clerk shall transmit such proposed local law forthwith to the legislative body of the city. If the proposed local law is such that a referendum is not required for its adoption under the provisions of this chapter or of the city charter, the said legislative body may adopt it as its own act. If a referendum is required, the legislative body may submit it to the electors of the city at

the next general election occurring at least sixty days after the legislative body votes to submit it. If, however, during a period of two months immediately following the filing of such a petition the said legislative body shall fail so to adopt such local law without change or to submit it without change to the electors of the city as aforesaid, an additional petition filed with the clerk of the city at least two months and not more than four months after the filing of the original petition and signed at any time prior to its filing by qualified electors who did not sign the original petition, equal in number to five per centum of the total number of votes cast for governor in such city at the last gubernatorial election, may require the submission of the local law at the next general election held not less than sixty days after the filing of such additional petition. When so required the city clerk shall transmit such proposed local law in the form in which it is to be submitted to the election officers charged with the duty of publishing the notice of such election.''

It will be observed that section 19-a states '' Such petition shall conform to the provisions of section sixteen in relation to petitions, it shall be examined and reported on by the city clerk as prescribed therein ''. The pertinent portion of section 16 of the City Home Rule Law is: '' The city clerk shall examine each such petition so filed with him and shall, not later than thirty days after the date of its filing, transmit to the local legislative body of the city a certificate that he has examined it and has found that it complies or does not comply, as the case may be, with all the requirements of law.''

On April 11, 1951, the following amendment to section 19-a became effective (L. 1951, ch. 721): '' No such proposed local law requiring the expenditure of money shall be accepted by the city clerk or be adopted or become effective unless there shall be submitted as a part of such proposed local law, a plan to provide moneys and revenues sufficient to meet such proposed expenditures.'' Without this amendment there would be no controversy.

On June 30, 1951, a petition was filed with the city clerk. The petition was signed by qualified electors numbering in excess of 10% of the total number of votes cast for Governor in the city of Kingston at the last gubernatorial election. The petition contained a proposed local law providing for an increase in the minimum salaries of the firemen and policemen of the City of Kingston and also an increase from three to five in the number of annual increments to be paid to the policemen and firemen. To provide the revenues sufficient to meet the proposed expenditures the proposed local law attached to the petition provided:

" 53 (a) The Common Council shall provide the monies and revenues sufficient to meet the proposed additional expenditures of this local law by increasing the amount of monies and revenues annually required to be raised by it for the police fund of the Board of Police Commissioners, by an amount sufficient to meet and pay the additional expenditures proposed by this local law and by appropriating annually to the police fund of said board a sum of money sufficient to pay the minimum salaries and compensation, including increments to the policemen and patrolmen as fixed by the Board of Police Commissioners of the City of Kingston pursuant to this local law. The money necessary to meet the proposed annual expenditures provided by this local law shall be raised by the Common Council from those sources and through the manner by which the Common Council is authorized by law and the Charter of the City of Kingston to raise money for salaries, governmental functions and purposes. * * *

" (1). The Common Council, upon the adoption of this local law shall raise, authorize and appropriate immediately, a sum of money sufficient to pay the proposed increased expenditures of this Local Law for the balance of the year 1951 by issuing budget notes as authorized by law, in an amount, sufficient to pay the said proposed additional expenditures and said budget notes shall be paid by being included for payment in the annual budget of the City of Kingston, N. Y., for the year 1952."

On July 27, 1951, the city clerk forwarded the petition to the common council and certified to the common council, in substance, that the petition failed to comply with the provisions of section 19-a of the City Home Rule Law as amended by chapter 721 of the Laws of 1951. On August 20, 1951, the common council adopted a committee report which recommended that the council refrain from submitting the proposed local law to the voters.

On August 31, 1951, the city clerk received an additional petition containing more than the 5% minimum of additional signatures required by section 19-a. The additional petition and the proposed local law included in the petition were in the same form as the original petition and the proposed local law incorporated in the original petition. On September 5, 1951, the city clerk returned the additional petition to the parties, stating that he was prohibited from accepting the petition because the proposed local law did not contain a plan to provide moneys or revenues to meet the cost of the proposed expenditures and con-

sequently failed to comply with the amendment to section 19-a effective April 11, 1951.

It should be mentioned that no question is raised as to either petition by the corporation counsel or city clerk as to time of filing, number of signatures, genuineness of signatures or regularity. The only objection raised is that the local law contained in the petitions does not contain a plan. It may also be observed that the petitioners have not replied to the respondents' answer.

Three questions are involved:

1. Does the proposed local law included in the original petition and in the additional petition contain a plan to provide moneys and revenues within the meaning of the amendment of April 11, 1951?

2. May the petitioners benefit by the action of the city clerk in forwarding the original petition to the common council instead of rejecting it?

3. May the city clerk reject the second or " additional petition "?

Prior to the 1951 amendment to section 19-a the provision of revenues to pay mandatory salary increases voted by the people was left solely and entirely to the common council. The proposed local law contained in the petitions also leaves solely and entirely to the common council the problem of finding sources of revenue sufficient to pay the increased salaries. To hold that the proposed local law constitutes a plan within the meaning of the amendment would reduce the amendment to a mere fatuity.

The memorandum of the Conference of Mayors and Other Municipal Officials of the State of New York concludes: " Since the proposed amendment to the home rule law provides that any proposed local law requiring expenditures must provide a means for raising such revenues as are necessary to pay for same, the electorate will be able to intelligently vote upon the question presented to it."

If the proposed law provided that the " moneys and revenues sufficient " were to be raised by a 2% retail sales tax, or by a motor vehicle use tax, or by a general business tax, or by an increase in the real property tax rate, or by a specified combination of specific taxes, the electorate would be able to vote intelligently and there would be compliance with the statute. But if it were held that a plan was constituted by passing to the common council the entire problem of finding the necessary sources of revenue, the amendment to section 19-a would be rendered nugatory and futile. It seems obvious that the pro-

posed local law fails completely to satisfy the ineluctable requirement that it contain a plan to provide sufficient revenues to meet proposed expenses.

But the petitioners contend that in some manner they derive a benefit because the city clerk " accepted " the original petition " and affirmatively acted upon it by sending it to the Common Council ". It is true that the city clerk acted pursuant to the provisions of section 16, which require that " The city clerk shall examine each such petition so filed with him and shall, not later than thirty days after the date of its filing, transmit to the local legislative body of the city a certificate that he has examined it and has found that it complies or does not comply, as the case may be, with all the requirements of law." It is true also that he should have followed the amendment to section 19-a, which enjoined him from accepting a petition which failed to contain a plan within the meaning of the amendment. However, his transmitting the petition to the common council instead of returning it to the petitioners is entirely immaterial because the common council was under no statutory or other duty to act on the petition. " Under section 19-a, the City Council could either (a) enact that proposed local law, (b) prepare it for submission to the voters at the ensuing election, or (c) ignore it." (*Matter of Arditti* v. *Jacobson*, 180 Misc. 884, 885.)

Concededly the city clerk is clothed with authority to reject the original petition. The remaining question is whether he has discretion in respect to the additional petition or whether he must transmit the proposed local law to the board of elections and in conjunction with the corporation counsel (City Home Rule Law, § 18) prepare an abstract of the law and forward the abstract to the board of elections.

Before the amendment of 1951 it was decided that the duty of the clerk as to an additional petition was purely ministerial. In *Matter of Arditti* v. *Jacobson* (*supra*) it is stated at page 886: " With respect to the original petition (ten per cent of the voters) section 19-a provides: ' Such petition shall conform to the provisions of section sixteen [City Home Rule Law] in relation to petitions, it shall be examined and reported on by the city clerk as prescribed therein, * * *. The city clerk shall transmit such proposed local law forthwith to the legislative body of the city.' The city clerk therefore is clothed with authority to examine and report concerning the original petition. But with respect to the additional petition, the statute makes no similar provision. Whereas the original petition is transmitted

to the local legislature by the city clerk for consideration, the additional petition goes over their heads, so to speak, and upon filing ' may require the submission (to the voters) of the local law at the next general election  *  *  * ' (§ 19-a). Contrary to authorizing the city clerk to examine the petition and report to the city council as the statute does with regard to the original petition, there appears a single directive: ' When so required the city clerk shall transmit such proposed local law (the additional petition) in the form in which it is to be submitted to the election officers charged with the duty of publishing the notice of such election.' That means that the city clerk with the aid of the corporation counsel, shall prepare an abstract of the proposed local law concisely stating the title, purpose and effect thereof and forward same to the Board of Elections of the county. (See City Home Rule Law, § 18.) ''

But the *Arditti* case was decided in 1943 and prior to the effective date of the amendment on April 11, 1951. The amendment prohibits the city clerk from accepting a local law requiring the expenditure of money unless as a part of the law a plan to provide revenues is submitted. The prohibition contained in the amendment creates an exception to the general rule enunciated in 1943. If the additional petition contains no plan the city clerk is commanded to reject it. That this is so appears affirmatively on the face of the amendment itself. Even if the proposed law were submitted to and approved by the electorate it could not become law; by its failure to include a plan within the meaning of the statute the proposed law is immanent with futility. The amendment not only enjoins acceptance by the city clerk but also states '' no such proposed local law  *  *  * shall  *  *  * *be adopted* or *become effective* unless there shall be submitted  *  *  * a plan ''. (Emphasis supplied.) The Legislature could not have intended that the city clerk should accept nor that the city clerk and corporation counsel should forward to the board of elections a proposed law which by plain prohibitory fiat could never become effective, nor can it be said that submission to the electorate of a proposition worthless in law is the end to be served by the statute as viewed by the judges.

The prayer of the petitioners must be denied.

An order may be submitted.