Bubke, J.
Local Law No. 1 of 1959 of the City of Buffalo alters the boundaries of 26 of the 27 wards in the city. Local Law No. 2 divides the city into 9 councilmanic districts, each composed of 3 of the newly formed wards.
The validity of this legislation is challenged in two actions. One action seeks a declaratory judgment that Local Law No. 1 is invalid on the theory that it changes the mode of selection of members of the Erie County Board of Supervisors elected from the city, contrary to the prohibition found in the State constitutional and statutory home rule provisions, and that, in any event, a mandatory referendum on the local legislation is necessary. The complaint in this action also avers that the legislation is unreasonable, arbitrary and capricious.
*172 The second action is a mandamus proceeding which attacks Local Law No. 2 on the ground that the redistricting of Buffalo for the purpose of electing members of the City Council is dependent upon Local Law No. 1, which is invalid, and further asserts that both local laws, to be effective, must be submitted to a referendum. A supplemental petition asked for an adjudication that both local laws are ineffective regardless of the referendum.
In Action No. 1, the Supreme Court granted the plaintiff summary judgment declaring Local Law No. 1 invalid insofar as it changed the ward boundaries for the election of members to the County Board of Supervisors, and further held that the law was not unreasonable and arbitrary. In Action No. 2, the court ordered both local laws submitted to a referendum, and dismissed the supplemental petition.
The Appellate Division affirmed, but did not reach the question of the reasonableness of Local Law No. 1.
We affirm the finding that the local laws are not unreasonable for the reasons stated by the Supreme Court. However, we disagree with the conclusion reached by the courts below that Local Law No. 1 is invalid insofar as it pertains to the election of members of the Brie County Board of Supervisors, and that both local laws must be submitted to a referendum, insofar as they affect the election of members of the City Council of Buffalo.
The issues presented in this appeal once again call for a review of the degree of autonomy granted to municipalities under the State constitutional and statutory home rule provisions. The theory behind home rule is very simple: it is the thought that local problems, in which the State has no concern, can best be handled locally. In our present State Constitution, the People of New York have withheld from their Legislature the power to enact, by special legislation, laws concerning the “ property, affairs or government” of municipalities. (N. Y. Const., art. IX, § 11.) On the other hand, they have granted home rule power to municipalities in the following terms: “ Every city shall have power to amend and adopt local laws not inconsistent with the constitution and laws of the state relating to its property, affairs or government. Every city shall also have the power to adopt and *173 amend local laws not inconsistent with this constitution and laws of the state, and whether or not such local laws relate to its property, affairs or government, in respect to the following subjects: the powers, duties, qualifications, number, mode of selection and removal of all its officers and employees except members of the governing elective body of the county in which such city is wholly contained (N. Y. Const., art. IX, § 12; see, also, City Home Rule Law, § 11.)
The task of the judiciary has been, and is, to determine whether a specific act comes within the scope of the phrase ‘ ‘ property, affairs or government ” of a municipality. This phrase has been narrowly construed (see Adler v. Deegan, 251 N. Y. 467; Robertson v. Zimmerman, 268 N. Y. 52; Counties Securities v. Seacord, 278 N. Y. 34, 38), but if the phrase is to have any meaning at all there must be an area in which the municipalities may fully and freely exercise the rights bestowed on them by the People of this State in the Constitution. The lines of demarcation are, concededly, not precise and they must be defined on a case-by-case basis, but they must exist, else “ [h] orne rule for cities, adopted by the people with much ado and after many years of agitation, will be another Statute of Uses, a form of words and little else, if the courts in applying the new tests shall ignore the new spirit that dictated their adoption. The municipality is to be protected in its autonomy against the inroads of evasion.” (Matter of Mayor of City of New York [Elm St.], 246 N. Y. 72, 76.)
The mere altering of ward boundaries would seem, on its face, clearly to come within the scope of the terms ‘ ‘ property, affairs or government ” of a city. Only the city is affected by the change. Besidents of a county in which the city is contained are not affected. Certainly the State has no paramount interest in such changes. Historically, these changes have been unopposed on constitutional grounds and, indeed, local legislation is the usual method by which changes in ward lines are effected.
While this latter fact is not conclusive of the constitutional validity of the acts involved, it lends great weight to the conclusion that such legislation affects only the property, affairs or government of the municipality involved. (Easton v. Pickersgill, 55 N. Y. 310, 315; City of New York v. New York City *174 Ry. co., 193 N. Y. 543; Bareham v. City of Rochester, 246 N. Y. 140.) “ Let us recognize in our decision the useful division which custom and practice have made between those things which are considered State affairs, and those which are purely the affairs of cities.” (Adler v. Deegan, 251 N. Y. 467, 478, supra.)
But we are told that the alteration of ward boundaries is not exclusively an affairs of the city since members of the County Board of Supervisors are elected from these wards. It must be conceded that, for some purposes, a member of a County Board of Supervisors elected from a city is a city officer. (See Lane v. Johnson, 283 N. Y. 244; People ex rel. Clancy v. Board of Supervisors, 139 N. Y. 524.)
The Legislature has also recognized that the City Supervisors are, to some extent, city officers. In alloting representation on the Board of Supervisors of Erie County, it assigned one Supervisor to each of the 25 towns, the City of Tonawanda and the City of Lackawanna — a total of 27 Supervisors. It also alloted the City of Buffalo 27 Supervisors. Thus power and responsibility were equally divided between Buffalo and the smaller communities. The Legislature thus also indicated that it was alloting Board of Supervisors representation to local communities of government as well as to citizens generally.
Further, section 426 of the City Charter of Buffalo provides that vacancies in the Board of Supervisors from Buffalo shall be filled by the City Council, and not by the voters of the particular ward or district in which the vacancy occurs.
Hence we conclude that the alteration of ward boundaries is properly an affair of the municipality. A contrary construction of the Constitution—that the State Legislature may change district lines for local elections in every city of the State—leaves the citizens of these communities with virtually no redress or remedy where these boundaries are altered against their will. However, with this power properly residing in the local government, the citizens have an immediate and effective remedy, since they may remove those local officials who tamper with district lines contrary to their will in the next succeeding election.
It is true that section 12 of article IX of the State Constitution prohibits a municipality from enacting legislation which *175 affects the mode of selection of an officer, whose only function is to serve on the elective board of the county in which the city is wholly contained. It is also true that any local law which changes the mode of selection of the members of the City Council must be submitted to the electors of the city for approval (City Home Rule Law, § 15, subd. 4). However, we hold that the present alteration of ward boundaries does not come within the scope of the term ‘ ‘ mode of selection ’ ’. In Bareham v. City of Rochester (246 N. Y. 140, 146, supra) this court suggested that the “term ‘mode of selection’ expresses an intent to allow a city to determine not only that it shall cause its officers either to be elected or appointed but connotes also that a municipality may define the precise method by which either an election or appointment shall be effected.” This court, therefore, sustained that part of the local law of the City of Rochester which provided for the nonpartisan nomination and election of four members of the City Council.
The opinion of this court in Bareham does not suggest that alteration of ward boundaries constitutes a change in the mode of selection and, indeed, such changes do not alter the “ precise method ” by which the election is effected.
Members of the City Council and members of the County Board of Supervisors from the City of Buffalo are elected in precisely the same manner after the changing of the boundaries as before their alteration.
Since, then, the changing of the ward boundary lines affects neither the mode of selection of members of the Erie County Board of Supervisors, nor the mode of selection of members of the City Council, the local laws are a valid exercise of the power granted to the municipality under the provision of the State Constitution, and do not require a mandatory referendum.
The pleadings in Action No. 1 suggest that, since Local Law No. 1 is to be effective immediately, it affects the tenure of the present incumbents elected from the wards to the Board of Supervisors. This argument is without substance. The clear intent of the law is to change the ward boundaries for the succeeding municipal election, and the incumbents will remain duly elected officials representing their respective areas until the expiration of their terms.
*176 Accordingly, in Action No. 1, the judgment of the Appellate Division, insofar as it declares Local Law No. 1 invalid, should be reversed, without costs. In Action No. 2, the order of the Appellate Division, insofar as it directs the submission of Local Laws Nos. 1 and 2 to a mandatory referendum, should be reversed, without costs.