Andrew J. Gilday, Esq. Corporation Counsel, Kingston
You request our opinion concerning a local law to reapportion the wards in the City of Kingston. This became necessary because of population changes revealed by the 1980 Federal Decennial Census. There are thirteen wards in the City of Kingston and a city alderman is elected from each ward. City elections will be held this year for those offices. You report to us by telephone that the office of city supervisor has been abolished in the city and its population is represented at the county level by county legislators elected at large from the city.
You request our opinion what are the referendum requirements, if any, applicable to change of city ward lines, each ward being a political subdivision for the election of city alderman, and what is the earliest time that the reapportionment local law can become effective.
Municipal Home Rule Law § 10, subdivision 1, paragraph (i) authorizes every local government to adopt and amend local laws not inconsistent with the provisions of the Constitution or not inconsistent with any general law relating to its property, affairs or government. Prior to the adoption of the Municipal Home Rule Law, the City Home Rule Law § 11 was held to grant authority to cities to redraw ward boundaries byBaldwin v City of Buffalo, 6 N.Y.2d 168 (1959), in which it was said, at page 173:
 "The mere altering of ward boundaries would seem, on its face, clearly to come within the scope of the terms `property, affairs or government' of a city."
On page 174 the Court held:
 "Hence we conclude that the alteration of ward boundaries is properly an affair of the municipality."
and, on page 175:
 "Since, then, the changing of the ward boundary lines affects neither the mode of selection of members of the Erie County Board of Supervisors, nor the mode of selection of members of the City Council, the local laws are a valid exercise of the power granted to the municipality under the provision of the State Constitution, and do not require a mandatory referendum."
See, also, Neils v City of Yonkers, 38 Misc.2d 691 (Sup Ct, Westchester Co., 1962); Brairton v Gillette, 40 Misc.2d 1009 (Sup Ct, Monroe Co., 1963), affd without opn 23 A.D.2d 537 (4th Dept, 1965); Barzelay v Boardof Supervisors of Onondaga County, 47 Misc.2d 1013 (Sup Ct, Onondaga Co., 1965).
At the time of the Baldwin decision there was, and except only as stated below there is now, no provision either authorizing a referendum on petition or requiring a mandatory referendum for a change in ward boundaries. Municipal Home Rule Law § 23, subdivision 2, paragraph (h), requires a mandatory referendum on a local law that:
 "h. In the case of a city, changes the boundaries of wards, or other districts, from which members of the county board of supervisors, chosen as such in such city to represent the city, are elected."
This requirement does not apply to city aldermen or councilmen but only to county legislators. In Kingston the alteration of ward boundaries for the election of aldermen will not have any effect upon the areas from which representatives on the county governing body are elected.
In our opinion, a City of Kingston local law simply changing ward boundary lines from which aldermen are to be elected may be passed without a referendum because it does not do any of the things listed in Municipal Home Rule Law § 23 which force a local law to a mandatory referendum or in section 24 which subject a local law to a referendum on petition. The local law can be introduced as soon as the necessary research and drafting have been completed and passed rapidly, to be effective immediately upon passage.
The election calendar for the year 1981 provides that June 23 is the first date for circulation of designating petitions; July 27 is the first date upon which designating petitions may be filed; and July 30 is the last date upon which the petitions may be filed. Prompt enactment of a reapportionment local law will provide time within which prospective candidates for the office of city alderman may decide whether they wish to run for nomination and then circulate petitions and obtain signatures to designate them as candidates for nomination.