OPINION OF THE COURT
Per Curiam.
Petitioner individually and on behalf of an organization known as the "Committee for New York’s Future” is the sponsor of the "homeless family” initiative which seeks to amend chapter 24 of the New York City Charter. The proposed amendment would provide additional assistance to the homeless by requiring that they be housed in enclosed sleeping areas rather than barracks facilities now used as family shelters. The initiative petition was filed with the City Clerk and transmitted by him to the City Council, as the law requires, with his report that the petition did not meet statutory requirements. Petitioner then instituted this article 78 proceeding seeking an order of the court to compel respondent City Clerk to certify the petition valid. Special Term denied the application and dismissed the petition, holding the subject matter of the petition inappropriate for charter amendment through the initiative and referendum process and, alternatively, that the petition failed to provide the sufficient financ *191 ing plan required by the statute (Municipal Home Rule Law § 37 [11]). The Appellate Division affirmed.
The procedure for placing an initiative on the ballot for public referendum is set forth in Municipal Home Rule Law § 37. Upon the filing with the City Clerk of a petition signed by at least 30,000 registered voters (see, Municipal Home Rule Law § 37 [2]), the Clerk is required to examine the petition and make an initial determination of whether the petition complies with all the requirements of law (see, Municipal Home Rule Law § 37 [5]). Regardless of whether he finds the petition sufficient, the Clerk is required to transmit the initiative to the City Council for its consideration (see, Municipal Home Rule Law § 37 [6]), certifying to the council whether or not it complies with all the requirements of law. If he determines that the petition is in some way deficient the Clerk is required also to so inform the person who filed the petition and specify in what respects it fails to comply (see, Municipal Home Rule Law § 37 [5]). The determination that the petition does not so comply may be challenged by the sponsor in a proceeding in Supreme Court (see, id.).
Municipal Home Rule Law § 37 (11) provides that initiative petitions requiring the expenditure of funds shall not become "effective * * * unless there shall be submitted, as a part of such proposed local law, a plan to provide moneys and revenues sufficient to meet such proposed expenditures”.
The petition before us states that the initiative, if adopted, will cost New York City $30,000,000. It, therefore, is a petition for a proposed local law requiring "an expenditure of money” and must include a plan to provide "revenues sufficient to meet such proposed expenditures.” In an effort to do so the financing plan in the initiative petition provided for the necessary funds to be raised:
"4 (a) * * * pursuant to New York State Social Service Law § 91 or from the general fund, as the City Council shall deem appropriate.
"(b) To the extent that the plan described in the preceding sentence may not provide sufficient funds for such expenditures, the City Council shall enact a local law to raise the income tax on residents and/or the earnings tax on nonresidents and, if necessary, shall take steps to obtain additional authority to impose such taxes.”
Special Term determined that this financing plan did not satisfy the intent of the statute for two reasons: (1) because it *192 merely provided that the revenues needed for realization of the initiative would be made available from the city’s general budgeting process and (2) because it improperly provided that funding would be made available through the levy of new taxes not available to the city without prior approval of the State. We agree that the Clerk committed no error of law in advising the City Council that the initiative contained an invalid financing plan.
Section 37 (11) was enacted at the behest of the Conference of Mayors who were concerned that charter amendments involving substantial expenditures were being proposed or enacted without sufficient consideration of thé cost and the means for financing them (see, Welty v Heafy, 200 Misc 1010, 1012, affd 279 App Div 662; Letter of Addison Mallery, Chairman of Conference of Mayors and other Municipal Officials, Feb. 26, 1951, Governor’s Bill Jacket, L 1951, ch 721, amending City Home Rule Law § 19-a). At the behest of the Conference the statute was amended in 1951 to require that a financing plan be included in an initiative so that the electorate would be aware of the fiscal consequences of the proposal and could exercise their franchise intelligently (see, City of Syracuse v Wright, 4 Misc 2d 714, 724). This statutory purpose is not satisfied by financing plans that do no more than direct that the increased costs shall be met by general budgetary procedures (Matter of Hardwick v Kramer, 200 Misc 207, affd 278 App Div 1040, affd 303 NY 605). To meet statutory requirements, a financing plan must identify available sources from which the needed new revenues can be obtained (see, e.g., Welty v Heafy, supra [plan to be financed by enaction of several permissible local taxes]; City of Syracuse v Wright, 4 Misc 2d 714, supra [plan to be financed by increasing local property taxes; inasmuch as a question of fact existed that real property taxes could be raised, within permissible limits, the Appellate Division had previously remanded the matter for a hearing on the cost of the plan, see, 1 AD2d 577]; Matter of Mitrione, 28 Misc 2d 806, revd on other grounds 14 AD2d 716 [funds to be raised by increasing real estate taxes]). Section 4 (a) of the initiative petition fails to do so and that deficiency is not cured by the reference in it to Social Services Law § 91. Section 91 does no more than authorize the City Commissioner of Public Welfare, as part of the general budgeting process, to present his departmental estimates and requests for appropriation and directs the local legislature to levy taxes to meet such expenditures.
*193 Section 4 (b) of the plan also fails to meet the statutory requirement because the means for financing the initiative recited in it require the municipality to obtain permissive legislation from the State to raise the necessary revenues. The initiative fails to disclose that contingency. The State will not be bound by the results of the referendum and there is no assurance that it will cooperate with the city to permit the city to increase permissible tax levies to meet the responsibilities imposed by the referendum.
Finally, petitioner argues that the plan can be financed by projected savings from the elimination of existing programs for the care of the homeless. That, too, fails to meet the statutory requirements. It is not enough to hope that things will work out; the voters are entitled to advance notice of the cost and what taxes they may be required to pay to meet that cost and to weigh the desirability of the program against the financial impact upon them as taxpayers (see, Matter of Noonan v O’Leary, 284 App Div 646, 648).
In sum, a financial plan included as part of an initiative pursuant to Municipal Home Rule Law § 37 (11) if based in whole or in part upon revenue from a source over which the municipality does not exercise exclusive control is insufficient under Municipal Home Rule Law § 37 (11) as a matter of law. The "homeless family” initiative is invalid because it relies upon such speculative sources of revenue and therefore does not permit the voters to evaluate the impact of the initiative on them and make an informed choice on the issue.
Accordingly, the order of the Appellate Division should be affirmed, without costs.
Chief Judge Wachtler and Judges Meyer, Simons, Alexander, Titone and Hancock, Jr., concur in Per Curiam opinion; Judge Kaye taking no part.
Order affirmed, without costs.