OPINION OF THE COURT
Martin Evans, J.
Petitioner Allen H. Both (Roth), Secretary of New Yorkers for Term Limits, Inc., moves pursuant to sections 16-100 and 16-116 of the Election Law and section 37 (5) of the Municipal Home Rule Law, to have this court (i) declare valid, proper and legally effective the initiative petitions filed with the respondent Carlos Cuevas, City Clerk of the City of New York (City Clerk), which seek to amend the New York City Charter to establish a limit on the number of consecutive terms of office that various elected officials can serve; (ii) to direct the City Clerk to transmit to the City Council of the City of New York a certificate that the initiative petitions comply with all the requirements of law; and (iii) to direct the City Clerk to transmit to the corespondent Board of Elections of the City of New York (Board) the proposed local law. The petition is granted.
PROCEDURE GOVERNING INITIATIVE PETITIONS
Municipal Home Rule Law § 37 establishes the procedure by which a proposal to amend a city charter made by qualified electors of the city can be placed on the ballot for public referendum.
The first step is the submission to the City Clerk of an initiative petition signed by a minimum of 30,000 qualified voters. (Municipal Home Rule Law § 37 [2].) The Clerk must *241 then certify whether the petition complies with the applicable legal requirements and transmit his findings by certificate to the City Council. (Municipal Home Rule Law § 37 [5]; see, Municipal Home Rule Law § 24 [1].)
If the Clerk certifies that the initiative meets all the requirements of law, then the City Council has two months to either adopt the initiative or to submit it to the voters. (Municipal Home Rule Law § 37 [7].) If the Council fails to act on the first petition, the initiative may be placed on the ballot by filing an additional petition signed by a minimum of 15,000 qualified electors who did not sign the original petition. (Municipal Home Rule Law § 37 [7].)
If the additional petition complies with all the requirements of law, the City Clerk must transmit it "to the election officers charged with the duty of publishing the notice of such election, and the legislative body shall provide for suitable publication thereof and publicity thereon for the information of interested voters”. (Municipal Home Rule Law § 37 [9].)
The City Council is not bound by the certification of the Clerk that the proposed local law is not valid. (Matter of Adams v Cuevas, 133 Misc 2d 63, 64 [Sup Ct, NY County], affd 123 AD2d 526 [1st Dept], affd on other grounds 68 NY2d 188 [1986].) However, such certification affects the rights of the initiative’s sponsor and may be challenged in a proceeding in this court. (Supra, at 64-65; see, Municipal Home Rule Law § 37 [5].)
FACTS
Following these procedures, on May 18, 1993, Roth filed a petition in the office of the City Clerk, signed by 64,647 individuals, seeking to place on the ballot by public referendum a measure to amend the New York City Charter by imposing limitations on the number of consecutive terms that could be held by the Mayor, Public Advocate, Comptroller, Borough Presidents, and members of the City Council. If enacted, the local law would prohibit these officials from serving in the same office for more than two full consecutive terms or, in the case of a City Council member, more than one four-year term, unless at least one full term has elapsed since that person last held that office. Roth’s stated purpose in proposing the petition is to "ensure that elected representatives are 'citizen representatives’ who are responsive to the needs of the people and are not career politicians”.
*242 In accordance with Municipal Home Rule Law § 37 (5), the City Clerk commenced a review of the petition in order to determine whether it complied with "all the requirements of law”. On June 17, 1993, the City Clerk certified that the petition did not comply with all requirements of law, on the grounds that there was no statutory authority for the local law proposed in the petition, and that the Charter amendment, if enacted, would unconstitutionally infringe on the voters’ right to choose candidates of their choice and the right of incumbents to be elected to public office.
This proceeding was commenced pursuant to Municipal Home Rule Law § 37 (5) to challenge the City Clerk’s certification.
On July 27, 1993, after this proceeding was commenced, and pursuant to Municipal Home Rule Law §37 (7), petitioner filed an additional petition which contained 64,964 new signatures to amend the Charter by adding the same language as was proposed in the first petition. On August 26, 1993, the City Clerk indicated, once again, that the subject matter did not comply with "all the requirements of law”.
It is not disputed that, upon review by the City Clerk, the number of valid signatures in support of each petition exceeded the minimum required.
DISCUSSION
Article IX of the NY Constitution includes a Bill of Rights for local governments and recognizes that "[ejffective local self-government and intergovernmental cooperation are purposes of the people of the state”. (NY Const, art IX, § 1.) Article IX, § 2 (a) of the NY Constitution provides: "The legislature shall provide for the creation and organization of local governments in such manner as shall secure to them the rights, powers, privileges and immunities granted to them by this constitution.”
The purpose of home rule provisions of the Constitution is to secure the right of cities to choose their officers without hindrance from the State and to preserve their privilege of continuing to administer those powers of self-government which they enjoyed before the adoption of the Constitution, provided such powers remain local in nature. (People v Village of Pelham, 215 NY 374 [1915].)
Municipal Home Rule Law § 50 (1) provides: "It is the intention of the legislature by this chapter to provide for *243 carrying into effect provisions of article nine of the constitution and the statute of local governments and to enable local governments to adopt and amend local laws for the purpose of fully and completely exercising the powers granted to them under the terms and spirit of such article” (emphasis supplied).
Municipal Home Rule Law § 10 (1) (i) provides: "[e]very local government shall have power to adopt and amend local laws not inconsistent with the provisions of the constitution or not inconsistent with any general law relating to its property, affairs or government.”
Even where local laws do not relate to a city’s "property, affairs or government”, Municipal Home Rule Law § 10 (1) (ii) (a) (1) empowers a city to adopt and amend local laws, which are not inconsistent with constitutional or State law, relating to: "[t]he powers, duties, qualifications, number, mode of selection and removal, [and] terms of office * * * of its officers and employees” (emphasis added).
Article IX, § 2 (c) of the New York Constitution contains provisions virtually identical to Municipal Home Rule Law § 10 (1) (i) and (ii) (a) (1).
The court holds that the term limit legislation proposed here relates to New York City’s "affairs” and/or "government” as well as to the "terms of office” of its "officers”. This holding is consistent with the purpose of the home rule provisions of the Constitution and the legislative intent of the Municipal Home Rule Law. (See, NY Const, art IX, § 1; Municipal Home Rule Law § 50 [1]; People v Village of Pelham, supra.) Therefore, New York City is authorized to enact the term limit legislation proposed in the voter initiative petitions pursuant to the enabling language of both the New York State Constitution and the Municipal Home Rule Law.
The proposed term limit law is also a proper subject of public referendum pursuant to Municipal Home Rule Law § 37. Municipal Home Rule Law § 37 (1) permits the enactment of local laws by voter referendum if the local law "amend[s] a city charter (however extensively)” (emphasis supplied). The proposed law, which clearly relates to the "affairs” and/or "government” of the City is an "amendment” within the meaning of Municipal Home Rule Law § 37.
Respondents’ first defense is that the proposed local law is beyond the local legislative authority granted pursuant to the State Constitution and the Municipal Home Rule Law. This defense must fail.
*244 Both the New York Constitution and the Municipal Home Rule Law mandate that local government shall have power to adopt and amend local laws provided such laws are: “not inconsistent with the provisions of the constitution or not inconsistent with any general law relating to its property, affairs or government.” (Municipal Home Rule Law § 10 [1] [i]; NY Const, art IX, § 2 [c].)
The Constitution also provides that "[rjights, powers, privileges and immunities granted to local governments by this article shall be liberally construed”. (NY Const, art IX, § 3.) Consistent with the constitutional provision requiring a liberal construction of the powers granted to municipalities, Municipal Home Rule Law also mandates that its provisions "shall be liberally construed”. (Municipal Home Rule Law §51; Yonkers Commn. on Human Rights v City of Yonkers, 654 F Supp 544, 552 [SD NY 1987]; Rozler v Franger, 61 AD2d 46, 52 [4th Dept], affd 46 NY2d 760 [1978].) This mandate reflects: "[T]he intention of the legislature by this chapter to provide for carrying into effect provisions of article nine of the constitution and the statute of local governments and to enable local governments to adopt and amend local laws for the purpose of fully and completely exercising the powers granted to them under the terms and spirit of such article(Municipal Home Rule Law § 50 [1] [emphasis supplied].)
Municipal Home Rule Law § 10 (1) (i) provides: “[E]very local government shall have power to adopt and amend local laws not inconsistent with the provisions of the constitution or not inconsistent with any general law relating to its property, affairs or government.”
An informal opinion by the New York State Attorney-General (1983 Opns Atty Gen 10) concluded that term limits relate to the “affairs” and "government” of a local government. This is consistent with one commentator’s observation that: “On the whole, it may be said that the urban residents of New York have the necessary power to fashion almost any form of government which they believe to be most helpful for the achievement of good government for their community.” (Hyman, Home Rule in New York 1941-1965: Retrospect and Prospect, 15 Buff L Rev 335, 348 [1965].)
The words “property, affairs or government” as used in the Municipal Home Rule Law and State Constitution have been construed to prevent the State from infringing on what are purely local concerns and to prevent cities from encroaching *245 upon matters that, to a substantial degree, are State-wide concerns. (See, Baldwin v City of Buffalo, 6 NY2d 168 [1959] [altering ward boundaries within the city was held to be a valid exercise of local legislative power]; County Sec. v Sea-cord, 278 NY 34 [1938] [local law which changed the method of collection of taxes set forth in the general Tax Law was held to be inconsistent with State law and not an appropriate exercise of a city’s authority to enact legislation which relates to its property, affairs or government]; Robertson v Zimmermann, 268 NY 52 [1935] [State law resulting in control of city’s sewer system was held not to violate city’s right of home rule because it was an exercise of the State’s police power which dealt directly with State-wide hygienic conditions of the communities within the State]; Adler v Deegan, 251 NY 467 [1929] [the State’s Multiple Dwelling Act, which set certain building standards to protect the health of inhabitants, was held not to violate city’s right of home rule because health of citizens was, to a substantial degree, a matter of State concern].)
The term limit legislation proposed here would affect New York City public officers only. The State has no paramount interest in term limits placed on those public officers and it is not a matter, which to a substantial degree, is a matter of State-wide concern. Therefore, this case is distinguishable from Adler (supra) and Robertson (supra) where the State’s overriding concern was the public’s health. It is also distinguishable from County Sec. (supra) where the subject local law conflicted, and could not be harmonized, with a general law. "[B]ut if the phrase ['property, affairs or government’] is to have any meaning at all there must be an area in which the municipalities may fully and freely exercise the rights bestowed on them by the People of this State in the Constitution. The lines of demarcation are, concededly, not precise and they must be defined on a case-by-case basis, but they must exist, else '[h]ome rule for cities, adopted by the people with much ado and after many years of agitation, will be another Statute of Uses, a form of words and little else, if the courts in applying the new tests shall ignore the new spirit that dictated their adoption. The municipality is to be protected in its autonomy against the inroads of evasion’.” (Baldwin v City of Buffalo, 6 NY2d, at 173, supra, quoting Matter of Mayor of City of N. Y. [Elm St.) 246 NY 72, 76 [1927].)
Therefore, it is clear that the term limit legislation is encompassed by the grant of authority to municipalities pur *246 suant to the State Constitution and the Municipal Home Rule Law to legislate with respect to their "property, affairs, or local government”. A different interpretation would be unreasonable, render the language used meaningless and ignore the Court of Appeals interpretation of those words in a case in which the matter touched upon purely local concerns in which the State did not have some overriding interest. (See, Baldwin v City of Buffalo, supra.)
Municipal Home Rule Law § 10 (1) (ii) (a) (1) empowers a city to adopt and amend local laws which are not inconsistent with the State Constitution or State law, even if they do not relate to its "property, affairs, or government”, if it relates to: "[t]he powers, duties, qualifications, number, mode of selection and removal, [and] terms of office * * * of its officers” (emphasis supplied).
Even if the enactment of the term limit law proposed here could not be interpreted as a proper exercise of the City’s power to enact legislation which relates to its "property, affairs or [local] government” pursuant to Municipal Home Rule Law § 10 (1) (i), it can be sustained pursuant to the grant of authority to adopt local laws which, nevertheless, relate to the "terms of office” of its own officers in Municipal Home Rule Law § 10 (1) (ii) (a) (1) alone. The term limit law certainly, rationally, relates to "terms of office” of a public officer. (See, Municipal Home Rule Law § 10 [1] [ii] [a] [1].) Therefore, authorization for term limit legislation may also be derived from that phrase of Municipal Home Rule Law § 10 (1) (ii) (a) (1).
Respondents assert as their second defense that the petitions are invalid because they seek to exercise legislative authority inconsistent with State law, because neither the New York State Constitution, Public Officers Law nor Election Law restricts the number of terms which a New York City elected official may serve. Respondents reason that, therefore, the proposed term limits would prohibit an act permitted by State law. However, respondents fail to cite any provision of either the New York State Constitution, Public Officers Law, Election Law or any other State statute which specifically prohibits any limitation of the number of consecutive terms an incumbent may serve in any given office or which, conversely, expressly grants an incumbent the right to an indefinite, unlimited number of consecutive terms in any office.
The court holds that the proposed local law is a permissible *247 supplement to existing State law with respect to a topic on which State law is silent and is not fatally inconsistent.
The "home rule” provision of the New York State Constitution and the Municipal Home Rule Law require that local laws enacted by local governments not be inconsistent with the provisions of the Constitution or any general law. (NY Const, art IX, § 2 [c]; Municipal Home Rule Law § 10 [1] [i].) A local law may be ruled invalid as inconsistent with State law, and outside the scope of the police power of local government, where there is an express conflict between the State and local laws, or where the State has clearly evinced, either expressly or implicitly, a desire to preempt local regulation of an entire field. (Jancyn Mfg. Corp. v County of Suffolk, 71 NY2d 91, 96-97 [1987].) If local law either permits an act which has been specifically prohibited by State law, or prohibits an act which has been specifically permitted by State law, the local law expressly conflicts with State law and is, therefore, impermissibly inconsistent. (Council for Owner Occupied Hous. v Koch, 119 Misc 2d 241, 245 [Sup Ct, NY County 1983], affd 61 NY2d 942 [1984].) For example, a local law which had the effect of changing the method of collecting taxes was held to be inconsistent with the general Taw Law and was stricken in County Sec. v Seacord (278 NY 34 [1938], supra).
However, "[t]he fact that both the State and local laws seek to regulate the same subject matter does not in and of itself give rise to an express conflict”. (Jancyn Mfg. Corp. v County of Suffolk, supra, 71 NY2d, at 97; see, People v Cook, 34 NY2d 100, 109 [1974] ["The fact that the State also taxes cigarettes has no significant relation to the price-differential aspect of the city’s enactment, and therefore cannot be said to create an inconsistency”].)
A local law "that covers the same subject matter as a State law by supplementing the general law with additional reasonable requirements is not void for inconsistency”. (People v Ortiz, 125 Misc 2d 318, 329 [Crim Ct, Bronx County 1984].)
Silence on an issue should not be interpreted as an expression of legislative intent. (Council for Owner Occupied Hous. v Koch, 61 NY2d, at 944, supra; People v Cook, 34 NY2d, at 109, supra.) If the opposite were true, "the power of local governments to regulate would be illusory. Any time that the State law is silent on a subject, the likelihood is that a local law regulating that subject will prohibit something permitted elsewhere in the State. That is the essence of home rule”. (People v Cook, 34 NY2d, at 109.)
*248 Respondents have failed to establish that the term limit law prohibits what is specifically permitted by the Constitution or State law or that the term limit law permits what is specifically forbidden by the Constitution or State law. Instead, they rely merely on the State’s silence on this issue. This, without more, is an insufficient basis for a finding of an express conflict.
In Matter of Sinawski v Cuevas (133 Misc 2d 72, 76 [Sup Ct, NY County], affd 123 AD2d 548 [1st Dept 1986]), the lower court seemed to rely on the silence of the State Constitution and general laws in holding that the proposed charter amendment, which would have given the public the right to vote an incumbent out of office, was not appropriate. The Appellate Division affirmed the lower court’s holding only on the ground that the recall referendum was fatally flawed due to blatant ambiguities and illegal provisions. (See, 123 AD2d, at 548.) It specifically did not rule on the claim that the recall referendum was neither statutorily, nor constitutionally, authorized. (Supra.)
Respondents have similarly failed to demonstrate that the State has preempted the field of setting qualifications for holding office or terms of office, either expressly or impliedly. The court is satisfied that the Legislature has not impliedly evinced a desire to preclude the possibility of New York City’s regulation of the number of consecutive terms that its own public officers may serve. (See, Jancyn Mfg. Corp. v County of Suffolk, supra, 71 NY2d, at 98.) The statutory scheme simply does not reflect preemptive intent. (See, supra.)
A desire by the State for uniformity of term limits of its public officers at the State and local levels is conspicuously absent. (See, supra, at 98.) In fact, the contrary intention is evinced by NY Constitution, article IX, § 2 (c) (1) and Municipal Home Rule Law § 10 (1) (ii) (a) (1) which provide that the local governments have retained the power to adopt and amend local laws concerning "the powers, duties, qualifications, number, mode of selection and removal, terms of office, compensation, hours of work, protection, welfare and safety of its officers and employees” (emphasis supplied). This language clearly envisions and encourages variation among the local laws of municipalities. A desire for uniformity is also belied by enactment of legislation limiting terms of public officers of other municipalities of this State including, most recently, Suffolk County.
*249 Respondents’ third defense is that the petition is invalid because it proposes an "amendment” that is not related to any existing provision of the New York City Charter. This defensé is unconvincing.
Municipal Home Rule Law § 37 (1) permits a referendum to be submitted to the electorate for adoption of "a local law amending a city charter (however extensively)” (emphasis added). Municipal Home Rule Law § 2 (2) provides that the term "Charter amendment” means "any change in an existing charter presented as such under authority of this chapter or any state statute or charter. A charter amendment may be of any extent and may deal with any number of subjects.” The New York City Charter may be validly amended by the procedure of initiative and referendum if the proposed local law, "whether of a 'legislative’ or 'administrative’ character, alters or changes any provision contained in the charter”. (Matter of Cassese v Katz, 26 AD2d 248, 250 [1st Dept], affd 18 NY2d 694 [1966].) A charter amendment has been held to include a proposed law that "has a direct relation to” (26 AD2d, at 250) or "affects” (18 NY2d, at 696-697) existing provisions in a charter.
The proposed local law clearly relates to and affects certain public offices described in the New York City Charter and the terms of office specified for each in the New York City Charter, at sections 4, 24, 25, 81 and 91, by limiting the number of consecutive terms an incumbent may remain in office. The proposed local law is not wholly unrelated. Therefore, Matter of Adams v Cuevas (133 Misc 2d 63, 67 [Sup Ct, NY County], affd 123 AD2d 526 [1st Dept], affd on other grounds 68 NY2d 188 [1986], supra), in which the Appellate Division held that the proposed local law, which would require New York City’s Commissioner of Social Services to provide every homeless family with an enclosed separate sleeping area, was unrelated to any Charter provision and not a permissible "amendment” pursuant to Municipal Home Rule Law § 37, is distinguishable from this case.
Respondents assert as a fourth defense that the limitation of the number of consecutive terms of certain City officials is an arbitrary exclusion from office and therefore, beyond the power of any Legislature to prescribe qualifications for office. However, the court holds that the limit proposed here does not constitute an arbitrary exclusion but is, instead, a rational decision that would have a neutral application *250 toward all candidates and not discriminate on the basis of race, creed, color or sex.
To avoid classification as an impermissible, arbitrary exclusion, "[q]ualifications for office must have a rational basis, such as age, integrity, training or, perhaps, residence”. (Landes v Town of N. Hempstead, 20 NY2d 417, 420 [1967].) "If a classification is employed in prescribing qualifications, it must be nondiscriminatory and ’based on a real and substantial difference having reasonable relation’ to the object sought to be accomplished by the legislation.” (Supra.) A rational qualification for office has been held to include the requirement that an individual not be a member of the same household as another member of the same school board. (See, Matter of Rosenstock v Scaringe, 40 NY2d 563 [1976].) Therefore, rational qualifications are not limited to "age, integrity, training or, perhaps, residence” which Landes (supra, at 420) indicated were acceptable qualifications.
The term limit legislation proposed here has rational bases that have been judicially and legislatively identified and is nondiscriminatory. (See, Golden v Clark, 76 NY2d 618, 627; State ex rel. Maloney v McCartney, 159 W Va 513, 223 SE2d 607, 611.) The proposed local law is rationally intended to further many of the same objectives as the charter provision which was the subject of Golden. In Golden, as here, the local law is intended "to broaden opportunities for political and public participation * * * reduce the opportunities for corruption * * * and, through all of these methods, to increase citizens’ confidence in the integrity and effectiveness of their government”. (Golden v Clark, 76 NY2d, at 626.) "Democracy envisions rule by successive temporary majorities. The capacity to displace incumbents in favor of the representatives of a recently coalesced majority is, therefore, an essential attribute of the election system in a democratic republic. Consequently, both citizens and courts should be chary of efforts by government officials to control the very electoral system which is the primary check on their power.” (Tribe, American Constitutional Law § 13-18, at 1097 [2d ed 1988].)
Respondents cite Bareham v City of Rochester (128 Misc 642 [Sup Ct, Monroe County], mod and affd 221 App Div 36 [4th Dept], mod and affd 246 NY 140 [1927]) in support of their argument that the term limits proposal is an arbitrary exclusion from office. The Monroe Supreme Court declared that a charter amendment disqualifying one from appointive office *251 who within one year prior to appointment had held an elected office was an invalid exclusion.
The Bareham trial court stated that "[t]here is no presumption, either in fact or law, that a person who has held public office is unfit to continue to hold it or to succeed to some other office. On the contrary, the presumption is that one experienced in the public service is more likely to transact the duties attendant thereon faithfully and efficiently than the inexperienced or the novice”. (Supra, at 647.) The Appellate Division, Fourth Department, specifically affirmed the lower court’s ruling on this point. (221 App Div, at 40.)
The persuasive authority for the Bareham decision (supra) is not high considering the same Appellate Division, Fourth Department, 34 years later, while opining in dicta, would find no constitutional fault with a city provision that would preclude consecutive terms in office by one man. (See, Matter of Benzow v Cooley, 12 AD2d 162, 164 [4th Dept], affd 9 NY2d 888 [1961] [decided in the context of a determination that a proposed local law of Buffalo which would permit an incumbent Mayor to serve a successive, consecutive four-year term was not subject to mandatory referendum].) The Court of Appeals in Benzow did not comment on that issue although it affirmed the Appellate Division’s decision. (See, 9 NY2d, at 889.) However, in 1990 the Court of Appeals accepted the right of municipalities to pass legislation which similarly affected the political process. (See, Golden v Clark, 76 NY2d 618 [1990], supra.)
The grounds on which the City Clerk based his conclusion that the proposed law did not comply with all requirements of law included constitutional grounds which are not asserted as defenses. The invitation to deny the petition on these grounds is also declined.
Respondents assert that the proposed term limits burden the voters’ right to choose the candidates of their choice, and would, therefore, violate article I, § 1 of the New York Constitution which provides that, "[n]o member of this state shall be disenfranchised, or deprived of any of the rights or privileges secured to any citizen thereof’. However, respondents are incorrect.
While it is true that some voters may not be able to vote for the candidates of their choice, "their fundamental rights of voting, speech, and association do not confer upon them an absolute right to support a specific candidate”. (Stiles v Blunt, *252 912 F2d 260, 266 [8th Cir 1990]; see, Zielasko v State of Ohio, 873 F2d 957, 961 [6th Cir 1989]; Golden v Clark, 76 NY2d, at 628, supra.)
Furthermore, term limits do not unconstitutionally infringe on the various rights of voters deemed fundamental by the United States Supreme Court. All voters will still be able to find, on the ballot, a candidate who most nearly reflects his or her policy preferences on contemporary issues. (See, Lubin v Panish, 415 US 709, 716 [1974].) The proposed local law would be neutrally applied to all political parties, so as to not burden the right to vote by restricting the individual voter’s choice to only major-party candidates. (See, Anderson v Celebrezze, 460 US 780, 787 [1983]; Golden v Clark, 76 NY2d, at 626, supra.) The proposed local law would in no way violate the constitutional rule of "one voter, one vote”. (See, Reynolds v Sims, 377 US 533, 563 [1964].) The right of association is not infringed because associational rights do not require that any particular individual serve as that candidate. (Golden v Clark, 76 NY2d 618, 628 [1990], supra; see, Williams v Rhodes, 393 US 23, 39 [1968]; Tribe, American Constitutional Law § 13-19, at 1098, n 5 [2d ed 1988].) Finally, the proposed local law does not discriminatorily disenfranchise any identifiable class of voters. (See, Dunn v Blumstein, 405 US 330, 336 [1972]; Golden v Clark, 76 NY2d, at 626.) The proposed local law would have only an incidental effect on the right to vote. (See, Golden v Clark, 76 NY2d, at 624.) In conclusion, it seems paradoxical to say that the proposed local law, if enacted, would unconstitutionally infringe on the right of voters to choose candidates of their own choice, when it is the very same voters who would be given the choice of enacting the proposed local law.
Respondents claim that the proposed local law, if enacted, would unconstitutionally infringe on the right of elected officials to seek office. However, respondents fail to cite any constitutional provision or judicial precedent to support their contention. Traditionally, the argument has been made under equal protection grounds. However, the proposed local law, if enacted, would not impermissibly infringe on the right to seek office under the New York Constitution’s Equal Protection Clause (art I, § 11).
The Supreme Court of the United States has made it clear that there is no fundamental right to be a candidate. "Far from recognizing candidacy as a 'fundamental right,’ we have held that the existence of barriers to a candidate’s access to the ballot 'does not of itself compel close scrutiny.’ ” (Clements *253 v Fashing, 457 US 957, 963 [1982], quoting Bullock v Carter, 405 US 134, 143 [1972]; see, Hatten v Rains, 854 F2d 687, 693 [5th Cir 1988]; Matter of Rosenstock v Scaringe, 40 NY2d 563, 564 [1976], supra.)
Because the right of elected officials to seek office is not deemed "fundamental” and does not require strict scrutiny, the proposed local law can be sustained against an equal protection challenge if it is shown to be rationally related to some conceivable and legitimate legislative objective. (Golden v Clark, 76 NY2d, at 626, supra; Matter of Rosenstock v Scaringe, 40 NY2d, at 564, supra; cf., Maresca v Cuomo, 64 NY2d 242, 250 [1984] [rational basis test applied to requirements that Judges of the Civil Court of the City of New York retire at age 70]; Alevy v Downstate Med. Ctr., 39 NY2d 326, 332 [1976] [strict scrutiny test rejected and substantial interest test applied to medical school admission policy favoring minority applicants].)
The purpose of enacting term limitations, according to Roth, include "making elections more competitive * * * restoring public confidence in the democratic process * * * bringing fresh views and opinions to political office, encouraging elected representatives who are 'citizen representatives’ responsive to the needs of the people and are not career politicians, [and] providing a procedural safeguard to eliminate the multiple abuses that can come from unlimited tenure in office.” These are legitimate government purposes and have been identified as such, both judicially and legislatively, in States which have enacted term limit legislation. As stated by the West Virginia Supreme Court of Appeals in rejecting a challenge to a State constitutional amendment limiting the right of the Governor to seek a third consecutive term: "Constitutional restrictions circumscribing the ability of incumbents to succeed themselves appear in over twenty state constitutions, and exist in the Twenty-second Amendment to the Constitution of the United States with regard to the Presidency. The universal authority is that restriction upon the succession of incumbents serves a rational public policy and that, while restrictions may deny qualified men an opportunity to serve, as a general rule the over-all health of the body politic is enhanced by limitations on continuous tenure.” (State ex rel. Maloney v McCartney, 159 W Va 513, 517, 223 SE2d 607, 611 [1976], supra [cited with approval by thé Supreme Court of California in Legislature of State of Cal. v Eu, 54 Cal 3d 492, 286 Cal Rptr 283, 816 P2d 1309 (1991), cert denied — US —, 112 S Ct 1292 (1992)].)
*254 The proposed Charter amendment is addressed to these legislative interests and is rationally related to advancing them. The reasons for the proposed term limits identified by Roth here are similar to, and have been recognized as valid in, Golden (76 NY2d, at 626, supra). Consequently, it does not violate equal protection rights under the New York State Constitution.
Respondents contend that the proposed local law, if enacted, would unconstitutionally infringe on the right of elected officials to hold office. However, respondents fail to cite any precedent to support their contention. If this argument is based on a claim that elected officials have a property right in their employment as public officers, which is protected by the Due Process Clause of the New York State Constitution contained in article I, § 6, this argument must be rejected.
New York has recognized the rights and vested interests of public employees and granted them complete due process rights through its Civil Service Law, article 5, § 75. However, public officers do not have this protection. (See, Lanza v Wagner, 11 NY2d 317 [1962].) "Public offices are created for the benefit of the public, and not granted for the benefit of the incumbent, and the office holder has no contractual, vested or property right in the office.” (Supra, at 324.) There is no dispute that the positions, which would be affected if the proposed law was enacted, would be those of public officers and not those of protected public employees. Therefore, no due process right of incumbents will be violated by the proposed law.
Respondents also contend that the proposed law involves a matter of State concern and is, therefore, outside the scope of New York City’s power of self-rule. This is based on respondents’ claim that the law affects the constitutionally guaranteed rights to vote and to hold office. However, the right to vote and to hold office are in no way unconstitutionally infringed by the proposed local law (infra) and respondents have otherwise failed to demonstrate that term limits of public officers of New York City are of sufficient importance to the State, generally, to render it an improper subject of local legislation.
Upon review of the New York City Charter, and the powers and duties of the various elected officials who would be affected by the proposed local law, it is clear that substantial matters of local concern are implicated.
*255 Section 8 of the New York City Charter provides that the Mayor shall exercise all the powers vested in the City (NY City Charter § 8), that the Mayor shall be responsible for the effectiveness and integrity of City government operation (NY City Charter § 8 [a]), that the Mayor shall establish a professional audit function, in the executive office of the Mayor which is sufficient to provide the Mayor with such information and assurances as the Mayor, as the chief executive of the City, requires to ensure the proper administration of the City’s affairs and the efficient conduct of this business (NY City Charter § 8 [e]).
The Public Advocate, among his powers and duties, shall monitor the operation of the public information and public service complaint programs of the City agencies and make proposals to improve such programs (NY City Charter § 24 [¶] [1]), and inquire into any alleged failure of a City officer or agency to comply with any provision of the Charter (NY City Charter § 24 [i]).
The powers of the City Council include the power to adopt local laws (NY City Charter §28 [a]), and the power of investigation and oversight (NY City Charter § 29), including the right to "investigate any matters within its jurisdiction relating to the property, affairs, or government of the city” (NY City Charter § 29 [1]).
The Borough Presidents are empowered through the Charter to, among other powers, make recommendations to the Mayor and to other City officials in the interests of the people of each borough (NY City Charter § 82 [6]), maintain a budget office for each borough (NY City Charter § 82 [7]), and establish and maintain a planning office for each borough to assist the Borough President in planning for the growth, improvement and development of each borough (NY City Charter § 82 [9]).
The powers and duties of the Comptroller include that he or she "shall advise the mayor and the council on the financial condition of the city or any phase thereof and make such recommendations, comments and criticisms in regard to the operations, fiscal policies and financial transactions of the city as he or she may deem advisable in the public interest” (NY City Charter § 93 [a]), and the Comptroller shall have power to audit and investigate all matters relating to or affecting the *256 finances of the City (NY City Charter §93 [b]). The term limitations proposed here clearly affect the “affairs” and/or “government” of the City of New York.
CONCLUSION
Therefore, the petition, as amended, is granted.